176 Cal.App.4th 1426 (2009)
In re A.I., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
A.I., Defendant and Appellant.
No. C058506.
Court of Appeals of California, Third District.
August 25, 2009.
*1429 Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Stephen G. Herndon and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
SCOTLAND, P.J.
Juvenile courts are busy places with limited time to handle the many matters that come before them. In a commendable effort to help streamline the juvenile delinquency proceeding in this case, the minor's trial attorney agreed that law enforcement witnesses need not testify twice, first at a hearing on the minor's motion to suppress evidence and then give essentially the same testimony at the jurisdictional hearing. If, after hearing those witnesses' testimony, the court denied the suppression motion and the minor wanted to "continue" with a contested trial of the charge, the People would call one more witness and the court could consider all the testimony in determining whether to sustain the charge and declare the minor a ward of the court.
The rub is this. The minor was offered deferred entry of judgment, a disposition that would be beneficial to the minor but would be forfeited if he elected to go to trial on the charge. The minor did not immediately agree to this disposition because he thought the charge was based on illegally seized evidence; thus, he exercised his right to ask the court to suppress the evidence. After losing the suppression motion, the minor sought deferred entry of judgment. However, the prosecutor said the offer was no longer available because the trial had begun. The court agreed, saying that disposition was "`"off the table."'"
The minor appeals, asserting he remained eligible for deferred entry of judgment. The People acknowledge that an eligible minor can obtain deferred entry of judgment any time prior to the commencement of trial and, therefore, does not forfeit that option by litigating a motion to suppress evidence. Nevertheless, the People continue to insist that said disposition was no longer *1430 available in this case because the procedure to which the minor's counsel agreed constituted the commencement of trial.
We conclude the minor's counsel deserves a pat on the back, not a stab in the back, for agreeing to a procedure intended to benefit the court and the prosecutor by avoiding repetitive testimony that would have unnecessarily burdened witnesses and used up precious juvenile court time. As we will explain, the record shows that, despite ambiguous language used by the court, the jurisdictional hearing did not commence with the suppression hearing and, thus, the minor timely requested deferred entry of judgment after his suppression motion was denied. We caution, however, that to avoid the potential trap from which the minor escapes due to our reading of the record, counsel and the court in other juvenile delinquency cases should unequivocally state on the record that, when the timesaving process employed in this case is used, the trial does not commence until after the ruling on the motion to suppress evidence and an eligible minor then decides whether to agree to deferred entry of judgment.

FACTS AND PROCEDURAL BACKGROUND
A.I. (the minor) was arrested for possessing 4.3 grams of marijuana, a digital scale, several dozen plastic baggies, and $512 in cash. He claimed that the marijuana was for his personal use; the scale was to "make sure the seller gave [him] the right amount"; the baggies were to "moderate how much [he] smoke[d]"; and the cash was the proceeds of a check he received from the Sacramento County Office of Education.
After the minor was accused of possessing the marijuana for sale (Welf. & Inst. Code, § 602, subd. (a); Health & Saf. Code, § 11359), the prosecutor determined that the minor was statutorily eligible for deferred entry of judgment. The minor was given written notice of that determination, and the probation department recommended the minor be placed in this status for two years. (Further section references are to the Welfare and Institutions Code.)
The juvenile court found the minor was eligible and suitable for deferred entry of judgment. The following exchange occurred:
"THE COURT: In this matter the minor is charged with a felony. He appears eligible and suitable for [deferred entry of judgment]. [¶] Mr. Baker [defense counsel], that's being rejected? We are setting this matter for trial?
*1431 "[DEFENSE COUNSEL]: Yes, your Honor."
Two weeks after the minor filed a motion to suppress the marijuana, scale, baggies, and cash seized from him (§ 700.1), the juvenile court found the minor was eligible for deferred entry of judgment but had rejected that option. The court's minute order does not mention the suppression motion.
At a hearing three days later, held before a different judicial officer, the court stated that it would "begin by handling the suppression motion." The court explained that, from its discussions with both counsel and with the presiding judge's administrative assistant, there was a "trailing trial" and "we're kind of going to be hearing it contemporaneously [with] the suppression motion . . . ." The prosecutor agreed. The following exchange then took place:
"THE COURT: Okay. So we'll put on the case like you would a normal jurisdictional trial, Ms. Lorenz [the prosecutor], and then at some point then I think you said you have three or four witnesses.
"[THE PROSECUTOR]: Right, Your Honor. So I have three witnesses that directly impact the motion to suppress. After those three witnesses, we would ask the Court to make the ruling on the motion. And then if we get the ruling, defense counsel and petitioner want[] to continue, then petitioner has one additional witness for trial.
"THE COURT: Okay. For the jurisdiction trial. Okay. [¶] Is that okay with you, [defense counsel], that we proceed in this manner?
"[DEFENSE COUNSEL]: Yes, that's fine."
After hearing the testimony of three prosecution witnesses, the juvenile court denied the motion to suppress evidence. The following exchange then occurred:
"THE COURT: Okay. Now, having denied the suppression motion, [defense counsel], do you need a moment to talk to [the minor] regarding if we need to go further or should [the prosecutor] just wrap up the trial now? Should we just go further and finish up the trial? She has one more witness.
*1432 "[DEFENSE COUNSEL]: What's the offer at this point?
"THE COURT: Let's go off the record."
The settled statement on appeal reveals "`[d]efense counsel stated that [the minor] was prepared to accept the previous offer of Deferred Entry of Judgment. The deputy district attorney objected to this offer because the proceedings had already begun. She stated that this offer was now unavailable. The court stated deferred entry of judgment "is now off the table and no longer available."'" The prosecutor then called her final witness, after which a defense witness testified. Thereafter, the juvenile court found the minor possessed the marijuana for sale and, thus, came within the provisions of section 602. Again stating the minor was no longer eligible for deferred entry of judgment, the court declared him a ward of the court and released him to parental custody subject to various conditions.

DISCUSSION
The minor contends, and we agree, the juvenile court erred in denying his request for deferred entry of judgment (DEJ) following his unsuccessful motion to suppress evidence.
(1) The DEJ provisions of section 790 et seq. "provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. [Citations.]" (Martha C. v. Superior Court (2003) 108 Cal.App.4th 556, 558 [133 Cal.Rptr.2d 544] (hereafter Martha C.); see In re Kenneth J. (2008) 158 Cal.App.4th 973, 976 [70 Cal.Rptr.3d 352].)
(2) "Section 790 makes a minor eligible for DEJ if all the following circumstances exist: [¶] `(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense. [¶] (2) The offense charged is not one of the offenses enumerated in subdivision (b) of Section 707. [¶] (3) The minor has not previously been committed to the *1433 custody of the [Department of Corrections and Rehabilitation, Division of Youth Facilities]. [¶] (4) The minor's record does not indicate that probation has ever been revoked without being completed. [¶] (5) The minor is at least 14 years of age at the time of the hearing. [¶] (6) The minor is eligible for probation pursuant to Section 1203.06 of the Penal Code.' [Citation.]" (Martha C., supra, 108 Cal.App.4th at pp. 558-559.)
(3) "If the minor waives the right to a speedy jurisdictional hearing, admits the charges in the petition and waives time for pronouncement of judgment, the court may summarily grant DEJ or refer the matter to the probation department for further investigation. The department is required to take into consideration `the defendant's age, maturity, educational background, family relationship, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation.' [Citation.] The [juvenile] court makes `the final determination regarding education, treatment, and rehabilitation of the minor.' [Citation.]" (Martha C., supra, 108 Cal.App.4th at p. 559.)
(4) "To be admitted to the DEJ program, a minor must be eligible under section 790, subdivision (a). While such eligibility is a necessary condition for DEJ, it is not alone a sufficient basis. Under proper circumstances the court may refuse DEJ even to minors eligible under section 790, subdivision (a). [Citation.] While section 790 et seq. might be clearer on the matter, we conclude such denial is proper only when the trial court finds the minor would not benefit from education, treatment and rehabilitation. [¶] Proposition 21 contains a noncodified section entitled Findings and Declarations; subdivision (j) of those findings states: `Juvenile court resources are spent disproportionately on violent offenders with little chance to be rehabilitated. If California is going to avoid the predicted wave of juvenile crime in the next decade, greater resources, attention, and accountability must be focused on less serious offenders such as burglars, car thieves, and first time non-violent felons who have potential for rehabilitation. This act must form part of a comprehensive juvenile justice reform package which incorporates major commitments to already commenced "at risk" youth early intervention programs and expanded informal juvenile court alternatives for low-level offenders. These efforts, which emphasize rehabilitative protocols over incarceration, must be expanded as well under the provisions of this act, which requires first time, non-violent juvenile felons to appear in court, admit guilt for their offenses, and be held accountable, but also given a non-custodial opportunity to demonstrate through good conduct and compliance with a court-monitored treatment and supervision program that the record of the *1434 juvenile's offense should justly be expunged.' (Italics added.) [¶] These findings express not only a strong preference for rehabilitation of first-time nonviolent juvenile offenders but suggest that under appropriate circumstances DEJ is required. This strong preference for rehabilitation and the limitation on the court's power to deny delayed entry of judgment are reflected in the procedures used in considering DEJ." (Martha C., supra, 108 Cal.App.4th at pp. 560-561, first italics added, second italics in original.)
Here, the juvenile court denied the minor DEJ without finding that "the minor would not benefit from education, treatment and rehabilitation." (Martha C., supra, 108 Cal.App.4th at p. 561.) Instead, as the settled statement makes plain, the minor's entitlement to DEJ was treated by court and counsel as a mere "offer" from the prosecution that had been taken "`"off the table and [thus was] no longer available."'"
In claiming that DEJ was properly denied, the People argue the rules governing DEJ in juvenile cases "should be the same as those in adult cases." (Citing In re Mario C. (2004) 124 Cal.App.4th 1303, 1309 [21 Cal.Rptr.3d 891] [juvenile and adult schemes are "parallel"]; In re Sergio R. (2003) 106 Cal.App.4th 597, 607 [131 Cal.Rptr.2d 160] ["the two comparable statutory schemes" have "substantially similar language"].)
The People acknowledge that Morse v. Municipal Court (1974) 13 Cal.3d 149 [118 Cal.Rptr. 14, 529 P.2d 46] (hereafter Morse) held diversionthe adult analog of DEJ"requires the district attorney to refer a case to the probation department if a defendant, who has previously been determined eligible under [Penal Code] section 1000, consents to diversion and waives his right to a speedy trial at any time prior to the commencement of trial. Defendants eligible for diversion may tender usual pretrial motions prior to their expression of consent to consideration for diversion." (Id. at p. 160, original italics, fn. omitted.) Morse involved a motion to suppress evidence. (Id. at p. 153; Pen. Code, § 1538.5.)
(5) Applying Morse in the context of juvenile DEJ leads to the conclusion that a minor may first litigate a suppression motion and then, after its denial, accept DEJ. The People concede this is so.
However, the People argue that Morse is distinguishable, and that the minor's DEJ request was properly denied because his counsel stipulated the testimony from the three prosecution witnesses who appeared for the suppression *1435 motion would later be evaluated on the issue of juvenile court jurisdiction. In the People's view, while a minor may "tender usual pretrial motions prior to [his] expression of consent to consideration for diversion" (Morse, supra, 13 Cal.3d at p. 160), he cannot stipulate that his opponent's evidence can later be considered by the court on the jurisdiction issue. According to the People, the stipulation and ensuing suppression hearing were akin to the commencement of trial in adult court, at which point a request for diversion is too late. (Id. at p. 157.) We are not persuaded.
Stipulations such as the one in this case promote judicial economy. Discouraging them would serve no countervailing purpose.
The obvious purpose of the stipulation was to avoid the need for the three prosecution witnesses to make successive appearances at the suppression hearing and, if the minor then declined DEJ, at the jurisdictional hearing where the testimony could be expected to be duplicative and overlapping. The procedure conserved the witnesses' time as well as the resources of court and counsel. In fact, up to the point the suppression motion was denied, the procedure had not consumed significantly more resources than a stand-alone suppression hearing. Thus, the minor did not entice the court and counsel to expend resources unique to a jurisdictional hearing before seeking DEJ. The minor requested DEJ prior to the commencement of the stand-alone part of the jurisdictional hearing.
The People argue a "reasonable minor" would not "expect to be able to game the system by asking the court to defer entry of judgment only after testing the strength and resolve of the prosecution's case at the jurisdiction hearing." But the minor performed no "testing" beyond that which was implicit in the pretrial suppression motion, which the People concede did not cut off the minor's right to request DEJ. (Morse, supra, 13 Cal.3d at pp. 153, 160.)
The cases on which the People rely are readily distinguishable. In In re Kenneth J., supra, 158 Cal.App.4th 973, a minor completed the contested jurisdictional hearing without ever requesting DEJ; thus, the juvenile court did not err by not holding a DEJ hearing absent the minor's request. (Id. at pp. 978-980.) In In re Usef S. (2008) 160 Cal.App.4th 276 [72 Cal.Rptr.3d 612], a contested jurisdictional hearing was completed without the minor ever requesting DEJ. Here, in contrast, DEJ was requested before the contested jurisdiction hearing was completed and before the expenditure of resources beyond those that were necessary for a pretrial suppression motion.
*1436 The People's argument has the unintended consequence of inviting the waste of judicial resources by dissuading minors who are eligible and suitable for DEJ from agreeing to the timesaving and resource-saving procedure used in this case. As the minor notes, "there was no rational tactical advantage to [him] in agreeing to allow the court to hear the two separate proceedings in tandem," i.e., simultaneously rather than seriatim.
Section 791, subdivision (a), states in pertinent part: "The prosecuting attorney's written notification to the minor shall . . . include all of the following: [¶] . . . [¶] (3) A clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant a deferred entry of judgment with respect to any offense charged in the petition . . . ." (Italics added.) In this case, the written notification stated DEJ would be granted "in lieu of normal court proceedings." In a supplemental brief, the People argue the notification and, effectively, section 791 itself mean that DEJ must be awarded "prior to the beginning of the jurisdictional hearing," which is a "normal court proceeding[]."
(6) However, nothing in section 791 reveals an intent to compel a minor to choose between a suppression hearing and DEJ; and the People do not argue that a DEJ election must precede a suppression hearing. Simply stated, section 791 did not require the minor to request DEJ prior to the beginning of the suppression hearing where the court would take testimony that, due to the parties' agreement, could then be used for purposes of the ensuing jurisdictional hearing.
The People cite In re Mitchell G. (1990) 226 Cal.App.3d 66 [276 Cal.Rptr. 245] for the proposition that the minor's stipulation caused jeopardy to attach at the time the first prosecution witness was sworn. (Id. at pp. 68-72.) Even if that is so, the shield of the double jeopardy clauses should not be turned into a sword for striking down the minor's attempt to admit the charge.
(7) In sum, the record shows that, despite ambiguous language used by the court, the jurisdictional hearing did not commence with the suppression hearing and, thus, that the minor timely requested DEJ after his suppression motion was denied.
In light of our conclusion above, we need not address the minor's contention that, if his DEJ entitlement did not survive the commencement of the consolidated hearing, then the notice he received describing the DEJ procedure was inadequate.

*1437 DISPOSITION
The jurisdictional and dispositional orders are reversed, and the matter is remanded to the juvenile court with directions to entertain the minor's request for DEJ.
Sims, J., and Butz, J., concurred.