Filed 11/17/14  In re Donovan B. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


In re DONOVAN B., a Person Coming
Under the Juvenile Court Law.

THE PEOPLE,

    Plaintiff and Respondent,

    v.

DONOVAN B.,

    Defendant and Appellant.

_____/

A139874

(Alameda County
Super. Ct. No. SJ12019596)

The juvenile court found Donovan B. (the minor) committed two counts of robbery (Pen. Code, § 211), adjudicated him a ward of the court (Welf. & Inst. Code, § 602),[1] and placed him on probation.

The minor appeals.  He contends: (1) the court erred by denying his motion to dismiss based on law enforcement's bad faith, intentional destruction of evidence; (2) the impermissibly suggestive pretrial identification procedure violated his due process rights; (3) substantial evidence does not support the court's jurisdictional findings; (4) the court erred by excluding one victim's handwritten statement; (5) the prosecutor committed misconduct during closing argument; and (6) the court erred by permitting the prosecutor

---

[1]    Unless noted, all further statutory references are to the Welfare and Institutions Code.

1

to condition a plea bargain on his waiver of deferred entry of judgment (DEJ) rights. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In a section 602 petition, the People alleged the minor committed two counts of robbery (Pen. Code, § 211).

*The Robbery*

Hayward High School sophomores Carlos E. (Carlos) and E.A. were leaving the school at 3:50 p.m. when two young men approached them. One young man pointed a handgun at Carlos's stomach and took his phone. The other young man reached into E.A.'s pocket and took E.A.'s phone. A third young man — later identified as the minor — "came from [ ] . . . far away, and he started yelling, 'Give us money[.]'" Then the minor reached into Carlos's pocket and took his headphones. He also removed, but returned, keys from E.A.'s pocket. E.A. had seen the minor "around campus" but did not know him, or his name. E.A. "got a clear look" at the minor's face during the incident. The young man with the gun threatened Carlos and E.A., telling them they were "going to get killed or shot" if they reported the incident. Together, the three young men walked away.

*The Victims Identify the Minor*

Immediately after the robbery, Carlos and E.A. went to assistant principal Dave Seymour's office and told him they had been "robbed at gunpoint." They seemed "shaken up[.]" Seymour asked each boy to fill out "witness statement papers." Carlos and E.A. began filling out the statements by hand. They sat side by side at a desk with a partition separating them. E.A. could see Carlos, but not what Carlos was writing. While they "wrote the testimony," Carlos and E.A. "talk[ed] about what [the minor] was wearing and stuff like that. . . . And that's basically it." Seymour went in and out of the office while Carlos and E.A. completed their statements.

When Seymour asked Carlos and E.A. if they knew who robbed them, they said no. At that point, Seymour gave the two boys a 40 to 50 page "picture book" containing a name and color photograph of each of Hayward High School's approximately 1,500

2

students.  Seymour asked the boys to "look through it to see if they recognized anyone" who "may have been" involved.  It was the school's "practice . . . if a student is not able to ID who did this to them, [to] give them a picture book to see if they can recognize who it may have been."  "[S]ince the incident happened roughly around the end of school," Seymour assumed one of the school's students may have been involved but he did not communicate this to Carlos and E.A.  Seymour did not try to influence the identification process, nor did he suggest or hint who might have been involved.

Seymour left the office to check on an investigation of another incident.  Carlos and E.A. divided the book in two and — over the course of five to seven minutes — looked at each picture in the book.  E.A. recognized the minor's photograph on page 9 of the book.  There were 42 photographs on that page, including eight pictures of males who, like the minor, were African American.  E.A. told Carlos he recognized the minor's picture.  When Carlos asked whether E.A. was sure, E.A. responded, "I'm 100 percent sure."  E.A. was "positive."  Initially, Carlos did not recognize the minor's picture because he "wasn't really paying attention" to the minor during the robbery and was "kind of confused, . . . kind of in shock" after the robbery.  After E.A. pointed out the minor's picture, however, Carlos recognized the minor.  Seymour returned to the office and the boys told him they recognized the minor's picture.  Both boys "agreed and pointed" to the minor's picture.  They also gave Seymour their completed handwritten witness statements.

Around that time, Hayward Police Officer Tommie Clayton, the school's resource officer, arrived.  E.A. told Officer Clayton the minor was involved in the robbery and Seymour explained the incident to Officer Clayton.  Officer Clayton reviewed E.A. and Carlos's handwritten statements and separated the boys.  Officer Clayton confirmed the victims' identification of the minor.  First, Officer Clayton examined the picture book page with the minor's photograph and confirmed there were "males on the page and African-American males [who] could be conceived as one of the possible suspects."  Then he covered all the names underneath the pictures.  Officer Clayton admonished E.A. the perpetrator's picture may not be on the page and showed E.A. the page with the

3

minor's photograph. E.A. looked at each line of photographs and identified the minor. Officer Clayton repeated the procedure with Carlos, who also identified the minor.

Later, at the police station, Officer Clayton prepared a "separate, formalized police statement" for E.A. because E.A.'s "handwriting was not legible." Officer Clayton typed the statement while E.A. "told him what to put."[2] Officer Clayton arrested the minor, who denied robbing Carlos and E.A.[3]

### *Motion to Dismiss and Jurisdictional and Dispositional Hearings*

During the jurisdictional hearing, the minor moved to dismiss "based on destruction of exculpatory evidence and denial of due process." Relying on *California v. Trombetta* (1984) 467 U.S. 479, 488-489 (*Trombetta*), and *Arizona v. Youngblood* (1988) 488 U.S. 51, 57-58 (*Youngblood*), the minor claimed the prosecution destroyed "material evidence that clearly would have played a significant role in [his] defense, the handwritten statement of the main victim," E.A. The prosecution opposed the motion.

At the conclusion of the jurisdictional hearing, the court found beyond a reasonable doubt the minor committed two counts of robbery (Pen. Code, § 211). The court remarked, "the Court sat through the testimony of the two victims [and] found them to be very, very credible, very solid, very credible, despite the fact they were not happy to be here and clearly in fear. They were clearly credible and subject to not only lengthy direct but lengthy and very clear cross-examination, and they were extremely credible."

---

[2]    When asked at the jurisdictional hearing whether he could read his own handwritten statement, E.A. responded, "not really" and admitted he had to "guess" at some of the words. E.A.'s handwritten statement did not contain the minor's name, because E.A. completed the statement before he looked in the picture book and identified the minor. The typewritten statement, written after E.A. identified the minor, contained the minor's name and height and weight. Officer Clayton included the minor's height and weight — which he derived after asking E.A. to make an estimate — in the typewritten statement. Officer Clayton testified the handwritten and typewritten statements were substantially the same in all other respects. E.A. signed the typewritten statement. The school misplaced E.A.'s handwritten declaration and could not find it despite conducting an extensive search.

[3]    At the jurisdictional hearing, the minor's mother testified he came home from school at 1:45 p.m. on the day of the incident. A school administrator testified the minor did not have sixth period and should have left school by 12:44 p.m.

The court also denied the minor's motion to dismiss. It concluded: (1) Seymour misplaced E.A.'s handwritten statement; (2) Officer Clayton took a copy of E.A.'s handwritten statement, not the original, and did not intentionally destroy the handwritten statement; (3) the minor was not prejudiced by the absence of the handwritten statement because E.A.'s typewritten statement "was the same" as his handwritten statement; and (4) E.A. and Carlos were "very clear in their identification" of the minor. The court adjudged the minor a ward of the court (§ 602) and placed him on probation.

DISCUSSION

I.

*The Court Did Not Err By Denying the Minor's Trombetta/Youngblood Motion to Dismiss*

The minor claims the court erred by denying his motion to dismiss for "law enforcement's bad faith failure to preserve" E.A.'s handwritten statement. He contends Officer Clayton deliberately destroyed E.A.'s handwritten statement and acted in bad faith, apparently because Officer Clayton was inclined "toward a hasty conviction, with no regard for truth-finding." We are not persuaded.

"The relevant due process principles have been discussed many times before." (*People v. DePriest* (2007) 42 Cal.4th 1, 41.) Under *Trombetta* and *Youngblood*, the prosecution has a duty to preserve exculpatory evidence "that (1) possesses an exculpatory value that was apparent before the evidence was destroyed and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. [Citations.] Moreover, the evidence must have been destroyed in bad faith." (5 Witkin, Cal. Crim. Law (4th ed. 2012) Criminal Trial, § 659, p. 1017; *People v. Lucas* (2014) 60 Cal.4th 153, 221 (*Lucas*).) We review the court's denial of the minor's *Trombetta/Youngblood* motion for substantial evidence. (*People v. Roybal* (1998) 19 Cal.4th 481, 510 (*Roybal*).)

The court properly denied the minor's motion to dismiss for several reasons. First, E.A.'s handwritten statement was not exculpatory. Substantial evidence supports the court's conclusion that E.A.'s handwritten statement was substantially the same as his

5

typewritten statement and inculpated the minor because it described how the minor demanded money from Carlos and E.A., took Carlos's headphones, and searched E.A.'s pockets. The minor's claim that E.A.'s handwritten statement was "potentially useful" because he could have used it to impeach E.A. does not alter our conclusion. It is the minor's burden to demonstrate E.A.'s handwritten statement was exculpatory; speculation it might have been helpful or useful to the defense does not satisfy this burden. (See *People v. Cook* (2007) 40 Cal.4th 1334, 1349; see also *Lucas, supra,* 60 Cal.4th at p. 221 [rejecting *Trombetta* claim in part because there was "no indication" the fingerprint "would have exculpated defendant"].)

The court properly denied the minor's motion to dismiss for the additional reason the minor was able to "obtain comparable evidence by other reasonably available means." (*Trombetta, supra,* 467 U.S. at p. 489; *People v. Carter* (2005) 36 Cal.4th 1215, 1246 (*Carter*).) As stated above, E.A.'s handwritten statement described the crime and inculpated the minor. The prosecution presented this same information at the jurisdictional hearing, where E.A. and Carlos testified and where defense counsel thoroughly cross-examined them. Substantial evidence supports the court's implicit finding that this evidence was comparable to E.A.'s handwritten statement. (See *People v. Walker* (1988) 47 Cal.3d 605, 638 [rejecting *Trombetta* claim regarding failure to preserve audiotape where defense counsel had opportunity to cross-examine officer who monitored taped conversation].) *Trombetta* does not require a defendant have access to evidence identical to what was lost or destroyed. (*People v. Gonzales* (1986) 179 Cal.App.3d 566, 575.)

Where — as here — comparable evidence "is available by other reasonably available means[,]" the defendant "'can show bad faith on the part of the police[.]'" (*Carter, supra,* 36 Cal.4th at p. 1246.) The minor failed to do so. He did not show Officer Clayton intentionally destroyed E.A.'s handwritten statement, let alone in bad faith. (*Youngblood, supra,* 488 U.S. at p. 58; *Lucas, supra,* 60 Cal.4th at p. 222 [no remedy under *Youngblood* where defendant failed to show "any bad faith in law enforcement's handing" of the evidence].) The court found Seymour misplaced E.A.'s

6

original handwritten statement and that Officer Clayton never had the original statement and did not intentionally destroy it.  Substantial evidence supports this conclusion.  The minor's self-serving interpretation of the evidence distorts the record and misses the point.  We must view the evidence in the light most favorable to the trial court's ruling. (*Roybal, supra,* 19 Cal.4th at p. 510.)  Having done so, we conclude the court properly denied the minor's *Trombetta/Youngblood* motion to dismiss.  (*Carter, supra,* 36 Cal.4th at p. 1246; *Lucas, supra*, 60 Cal.4th at pp. 221-222.)

II.

*The Minor's Challenge to the Pretrial Identification Procedure Fails*

The minor contends the court's jurisdictional order must be reversed because "[t]he identification procedures . . . were grossly irregular and suggestive, creating a 'substantial likelihood of misidentification.'"  According to the minor, the victims' pretrial identification was constitutionally deficient because: (1) Carlos and E.A. worked together to "select a suspect" from the picture book; (2) Seymour failed to admonish the boys before showing them the picture book; and (3) Clayton was somehow "complicit in" and "compounded" the "ill-conceived procedure" employed by Seymour.  We disagree.

To ""'determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances . . . . "We review deferentially the trial court's findings of historical fact, especially those that turn on credibility determinations, but we independently review the trial court's ruling regarding whether, under those facts, a pretrial identification procedure was unduly suggestive." [Citation.]  "Only if the challenged identification procedure is unnecessarily suggestive is it necessary to determine the reliability of the resulting identification." [Citation.]'"  (*People v. Thomas* (2012) 54 Cal.4th 908, 930-931 (*Thomas*).)

Trial counsel's failure to object to the pretrial identification procedure forfeits the issue on appeal (*People v. Elliott* (2012) 53 Cal.4th 535, 585) but we also reject the minor's claim on the merits for several reasons.  (*People v. Virgil* (2011) 51 Cal.4th

7

1210, 1251.) First, the minor's argument that Seymour's identification procedure was unduly suggestive fails because the circumstances asserted as creating an improperly suggestive identification procedure were not arranged by law enforcement officers. (*Perry v. New Hampshire* (2012) 132 S.Ct. 716, 730 (*Perry*).) As the United States Supreme Court has explained, the application of due process clause "turns[s] on the presence of state action and aim[s] to deter police from rigging identification procedures[.]" (*Id.* at p. 721.) Here, Seymour was a school administrator, not a law enforcement officer, and the minor has not argued or established Seymour was a state actor or that the identification procedure he employed was "arranged by law enforcement[.]" (*Ibid.*; see also *Thomas, supra*, 54 Cal.4th at p. 931.)

Even if we consider Seymour's identification procedure as one "arranged by law enforcement" (*Perry, supra,* 132 S.Ct. at p. 721), the minor's claim fails because the procedure was not unduly suggestive. (See *Thomas, supra,* 54 Cal.4th at p. 932.) Consistent with the school's policy, Seymour asked the victims to look through the picture book to "see if they recognized anyone that did this to them." Seymour did not suggest any particular person was involved in the robbery, nor did he try to influence the identification process. That E.A. recognized the minor's picture first and brought the picture to Carlos's attention does not render the procedure unduly suggestive. The two boys communicated about what the minor was wearing during the robbery, but there is no evidence they attempted to convince each other of the minor's guilt. To establish an identification violated due process, the minor must show "unfairness as a demonstrable reality, not just speculation." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.) The minor has failed to do so here.

For the first time in his reply brief, the minor cites *People v. Vanbuskirk* (1976) 61 Cal.App.3d 395 (*Vanbuskirk*) to support his argument the procedure Seymour used was unnecessarily suggestive because Carlos and E.A. looked at the picture book together. In *Vanbuskirk*, several people witnessed a convenience store robbery and identified the defendant. (*Id.* at pp. 398, 400.) The "evidence concerning the circumstances under which these identifications were obtained was in conflict," and there was some evidence

8

one witness, Ferguson, watched another witness, King, make a photographic identification before King identified the defendant. (*Id.* at p. 400, fn. omitted.) Defense counsel objected to the identification procedure, but the trial court ruled it "would not consider any unfairness in the photographic identification procedures as affecting the admissibility of the witnesses' courtroom identifications, or of evidence of their pretrial selections of defendant's photograph." (*Id.* at p. 401.) The *Vanbuskirk* court reversed and directed the trial court to hold a hearing on the fairness of the identifications, concluding the court's refusal to consider the suggestiveness of the identifications "deprived the defense of an opportunity to have the court resolve the evidentiary conflict[.]" (*Id.* at pp. 402, 407.) In dicta, the court noted "the situation exerted . . . pressure" on Ferguson to select the "same picture as King" but made clear: "[w]e do not suggest for one moment that the conflicting evidence compelled trial court findings that the procedures were impermissibly suggestive." (*Id.* at pp. 402-403.)

*Vanbuskirk* does not assist the minor for several reasons. First, and in contrast to *Vanbuskirk,* defense counsel did not object to the pretrial identification procedure, precluding the court from considering the claims the minor raises on appeal. Second, *Vanbuskirk* did not hold the procedure at issue there was impermissibly suggestive; its passing comment that situation exerted pressure on Ferguson to select the "same picture as King" was dicta. (*Vanbuskirk, supra,* 61 Cal.App.3d at p. 402.) Third, *Vanbuskirk* is factually distinguishable. Two friends looking at a picture book in a school principal's office is completely distinguishable from a police officer orchestrating a procedure whereby one witness watches another identify a defendant from a photographic lineup.

The minor's argument that Officer Clayton somehow "corrupted the identification process, and created a substantial risk of misidentification" has no support in the record. "[F]or a witness identification procedure to violate the due process clauses, the state must, at the threshold, improperly suggest something to the witness—i.e., it must, wittingly or unwittingly, initiate an unduly suggestive procedure." (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.) There is no evidence Officer Clayton improperly suggested anything to Carlos or E.A. He showed each victim the picture book separately. Before

9

showing the boys the picture book, Officer Clayton: (1) confirmed there were pictures on the page of African-American men who "could be conceived as one of the possible suspects[;]" (2) covered the names underneath the pictures; and (3) admonished both boys the page may not contain the perpetrator's picture. The procedure Officer Clayton used did not — as the minor claims — create a "substantial risk of misidentification."

Because we reject the minor's claim that the identification procedure was "unduly suggestive and unnecessary, we need not address the reliability" of the victims' identifications. (*Thomas, supra,* 54 Cal.4th at p. 931.)

### III.
### *Substantial Evidence Supports the Court's Jurisdictional Order*

The minor argues the jurisdictional order must be reversed because E.A. and Carlos's identifications "did not constitute substantial evidence" of his identity. We "apply the same standard of review applicable to any claim by a criminal defendant challenging the sufficiency of the evidence to support a judgment of conviction on appeal. Under this standard, the critical inquiry is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371.) We "'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*Id.* at p. 1371.)

The testimony of a single eyewitness is sufficient to prove a defendant's identity. (Evid. Code, § 411; Simons, Cal. Evidence Manual (2014) § 1:44, p. 67, citing cases.) By itself, E.A.'s identification amply supported the court's conclusion regarding the minor's identity.[4] Before the robbery, E.A. had seen the minor at school. During the

---

[4] Carlos initially passed over the minor's photograph in the picture book, but he later identified the minor several times, including at the jurisdictional hearing. Carlos's

robbery, E.A. "got a clear look at [the minor's] face." Shortly after the robbery, when E.A. saw the minor's picture in the picture book, he independently identified him and was "100 percent sure" and "positive" in the identification. He also identified the minor at the jurisdictional hearing and the court determined his testimony was credible. (*People v. Cooks* (1983) 141 Cal.App.3d 224, 268 [substantial evidence where witness was "'90 percent' certain" of his identification].) We conclude the prosecution proffered substantial evidence of the minor's identity, and we reject the minor's contention that the court "misremember[ed]" the evidence when making its jurisdictional findings.

IV.
*Any Assumed Error in Excluding Carlos's Handwritten*
*Statement Was Harmless*

The minor challenges the court's exclusion of Carlos's handwritten statement at the jurisdictional hearing. When the minor moved to admit Carlos's handwritten statement into evidence under the prior inconsistent and spontaneous statement exceptions to the hearsay rule (Evid. Code, §§ 1235, 1240), the prosecutor objected on hearsay grounds. The court agreed and declined to admit the handwritten statement

According to the minor, the court committed prejudicial error by excluding Carlos's handwritten statement. Assuming for the sake of argument the court erred, the minor's argument fails because he has not demonstrated — and cannot demonstrate — a reasonable probability of a more favorable result had the court admitted the statement into evidence. (*People v. Richardson* (2008) 43 Cal.4th 959, 1001, quoting *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).) Carlos's handwritten statement inculpated the minor and was cumulative of other prosecution evidence. (*People v. Anderson* (2012) 208 Cal.App.4th 851, 886.) Additionally, the evidence against the minor was strong. At the jurisdictional hearing, E.A. testified the minor demanded money from the victims, and reached into Carlos's pocket and took his headphones. Both victims identified the minor after the robbery and at the jurisdictional hearing.

---

identification, by itself, also constitutes substantial evidence of the minor's identity. (Evid. Code, § 411.)

11

V.

*The Minor's Prosecutorial Misconduct Claim Has No Merit*

The minor argues the prosecutor committed misconduct during closing argument by misstating three pieces of evidence. We address this claim on the merits and reject it. "Although it is misconduct to misstate facts, the prosecutor 'enjoys wide latitude in commenting on the evidence, including the reasonable inferences and deductions that can be drawn therefrom.' [Citation.]" (*People v. Collins* (2010) 49 Cal.4th 175, 230.)

First, the minor complains the prosecutor incorrectly stated Carlos testified a "'gun was placed in his face.'" He is correct. Carlos testified one of the robbers "pulled out a gun and put it to [his] stomach." "'[C]ounsel may not . . . state facts not in evidence [citation] or mischaracterize the evidence. . . .'" (*People v. Tafoya* (2007) 42 Cal.4th 147, 181, quoting *People v. Valdez* (2004) 32 Cal.4th 73, 133.) The prosecutor's isolated misstatement, however, did not prejudice the minor because the minor was not the gunman and the statement had no bearing on his guilt. (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1323-1324 [prosecutorial misconduct during closing argument was harmless].) Moreover, and as discussed above, the evidence of the minor's guilt was strong. Accordingly, any prosecutorial misconduct was harmless because the minor would not have received a more favorable outcome absent the prosecutor's misstatement. (*People v. Jasso* (2012) 211 Cal.App.4th 1354; *Watson, supra,* 46 Cal.2d at pp. 836-837.)

Next, the minor contends the prosecutor committed misconduct by stating E.A. testified the minor arrived from an off-campus location and that both victims testified the minor was not wearing a backpack. The prosecutor argued this evidence was "consistent with the testimony provided by the defense [that the minor] was not on campus after . . . his last class" and "could have been coming from another area such as his house." There was no misconduct because the prosecutor's statements accurately described the evidence. E.A. testified the minor came "from the street" and toward the school campus. He also testified none of the three men involved in the incident had or carried backpacks.

VI.

*The Minor's Claim Regarding the Proffered Plea Bargain Fails*

The minor seems to make two arguments regarding the plea offer at issue. As stated above, the minor was charged with two counts of robbery, a violent offense listed in section 707, subdivision (b)(3). As a result, he was not eligible for DEJ.[5] (See 10 Witkin, Summary of Cal. Law (10th ed. 2005) Parent & Child, § 891, p. 1084.) A few days before the jurisdictional hearing, defense counsel noted the minor "steadfastly maintains his innocence." The prosecutor offered to allow the minor to plead to Penal Code section "487(c) felony," an offense not listed in section 707, subdivision (b). When the court asked whether the [Penal Code section] 487 was a felony or misdemeanor, defense counsel responded, "Felony. He doesn't want to take it, because he maintains his innocence." Defense counsel then noted the minor was "DEJ-eligible. It's not something I've discussed with him yet, because he's been steadfast he wants to go to trial, but I don't know if maybe he could do a preplea DEJ. Is that possible?"

The court remarked, "I don't think they do them" and the prosecutor agreed.[6] In response, defense counsel said she thought "when there's been an offer in this case such as here, [for a Penal Code section] 487(c), somebody is DEJ eligible, they get the DEJ on whatever that offer is." The court noted it would "be happy to read any cases" on the issue and defense counsel said, "I'd be happy to provide one to you. I'm not sure it would make any difference if it's post. I'm not sure my client would even do it." Defense counsel provided the court with cases and indicated the minor "would accept the offer but only if he could be referred . . . for a Deferred Entry of Judgment[.]"

---

[5]    For an extensive discussion of the DEJ provisions in section 790 et seq., see *In re A.I.* (2009) 176 Cal.App.4th 1426, 1432.)

[6]    The record of the plea negotiations is not clear, but it appears the prosecutor offered to dismiss the robbery allegations (Pen. Code, § 211) if the minor admitted he committed felony grand theft (Pen. Code, § 487, subd. (c)) and waived DEJ eligibility and suitability.

13

After reading the cases, the court said minor would be eligible for a referral to a report and hearing DEJ if he "accepts the [Penal Code section] 487(c)[.]"  The court noted, however, that the "key" is that the prosecutor has to make the plea offer: "[t]here's nothing to indicate the offer is magical. . . . [T]here has to be DA agreement."  In other words, "once there is a eligibility plea *agreement*, . . . the DEJ report should be triggered."  The court explained to defense counsel, "You're saying he's entitled to [DEJ] on the basis of the offer with the jurisdictional hearing pending, and that's not this situation.  We have a jurisdictional hearing pending where he's contesting the charges.  So the offer is not magical.  It has to be a plea agreement.  You have to go one way or the other."

The prosecutor stated her plea offer was contingent on the minor waiving "his right to DEJ[.]"  She reiterated her position "that this is not a DEJ case, meaning the facts of this particular crime do not warrant [the minor] being eligible for [DEJ].  And so our offer had been a [Penal Code section] 487(c), facts and restitution open, and, of course, implicit within that is that he would have to waive his right to a suitability hearing period."  Following a recess, the minor rejected the offer.  Defense counsel explained the minor was "not willing to accept the offer.  He wants to go to trial."  The court held the jurisdictional hearing and found the minor committed two counts of robbery (Pen. Code, § 211).

The minor's first contention is the court erred by "permitting the prosecutor to condition a plea bargain upon [his] waiver" of DEJ eligibility.  This argument is premised on the assumption the court has authority to fashion the terms of a plea offer.  The minor cites no authority supporting this proposition and we are aware of none.  Our high court has explained "[t]he charging function is the sole province of the executive.  The executive also decides whether to engage in negotiations with the defense by which a more lenient disposition of the charges can be secured without trial . . ." (*People v. Clancey* (2013) 56 Cal.4th 562, 574 (*Clancey*).)  Accordingly, the court "has no authority to substitute itself as the representative of the People in the negotiation process[.]" (*People v. Orin* (1975) 13 Cal.3d 937, 943.)

14

Next, the minor urges us to create a rule prohibiting the prosecutor from "condition[ing] plea bargains upon waiver of the right to a DEJ suitability hearing."[7] At oral argument, defense counsel conceded no authority supports this position. In his briefs, the minor relies on *In re Greg F.* (2012) 55 Cal.4th 393 (*Greg F.*) and *In re Joshua S.* (2011) 192 Cal.App.4th 670 (*Joshua S.*) but neither case supports the imposition of such a rule under the circumstances presented here. *Greg F.* considered the interplay between two Welfare and Institutions Code statutes not at issue here — sections 733 and 782 — and determined section 733 does not deprive the juvenile court of discretion to dismiss a section 602 petition pursuant to section 782. (*Greg F., supra*, 55 Cal.4th at p. 400.)

The minor's reliance on *Joshua S.* is similarly unavailing. *Joshua S.* held a juvenile court must consider DEJ suitability when the minor does not request a jurisdictional hearing and admits the allegations of an amended petition. (*Joshua S., supra*, 192 Cal.App.4th at pp. 681-682.) Nothing in *Joshua S.* or the relevant statutes (§§ 790, 791) compels the prosecution to offer DEJ to a minor during the plea bargaining process, or to make any offer of a plea. In addition, *Joshua S.* is distinguishable because the parties in that case reached a plea agreement and the prosecutor did not condition the plea on a waiver of DEJ. Here and in contrast to *Joshua S.,* there was no such plea agreement and the minor did not admit anything. (See *T.J., supra*, 185 Cal.App.4th at p.

---

[7]     According to the minor, the Alameda County District Attorney's office attempts "in all of its cases" to "subvert DEJ by overcharging minors, and then allowing them to plead to lesser non-section 707(b) offenses only in exchange for waiver of their DEJ rights." We express no opinion on whether the Alameda County District Attorney's office has such a policy. We observe "[t]he charging authority implicated by section 707(d) constitutes an exclusive executive function, generally reviewable by the judicial branch only for certain constitutionally impermissible factors, such as discriminatory prosecution." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 556; *Clancey, supra,* 56 Cal.4th at p. 570; see also Seiser & Kumli on Cal. Juvenile Courts Practice and Procedure (Matthew Bender 2014) § 3.93[2][a][i], p. 3-150.) Additionally, *In re T.J.* (2010) 185 Cal.App.4th 1504, 1513-1514 (*T.J.*) rejected a similar argument. Finally, and as discussed above, the evidence at the jurisdictional hearing established the minor committed two counts of robbery in violation of Penal Code section 211.

1512 [court not required to conduct suitability hearing where the minor "had not *admitted* any allegations, and he necessarily had not done so *in lieu of* the jurisdictional hearing"]; *In re R.C.* (2010) 182 Cal.App.4th 1437, 1443 ["statutory scheme does not appear to contemplate that the juvenile court will make a suitability determination unless the minor admits the offense charged"]; *In re Usef S.* (2008) 160 Cal.App.4th 276, 286 [no error in failing to hold DEJ suitability hearing "once it became clear [the minor] was not admitting the allegations against him, but rather was insisting on contesting them at a jurisdictional hearing"].)

Finally, we reject the minor's cumulative error claim. (*People v. Thomas* (2011) 51 Cal.4th 449, 508.)

## DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.

16