Filed 9/24/21  In re D.W. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.W.,<br><br>    Defendant and Appellant. | A162067<br><br>(Solano County<br>Super. Ct. No. J44977) |

D.W. appeals from a juvenile court dispositional order placing him on informal probation for six months based on a finding he possessed a knife on school grounds.  On appeal, he claims the court wrongly denied his motion to suppress evidence of the knife.  D.W. alternatively claims, and the Attorney General concedes, that a conditional remand is proper because D.W.'s counsel did not seek a deferred entry of judgment notwithstanding D.W.'s eligibility for one.  Although we affirm the court's ruling on the motion to suppress, we agree with the parties that a conditional remand is appropriate for the court to evaluate D.W. for a deferred entry of judgment.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

In October 2019, D.W. was 15 years old and a student at Benicia High School. On the morning of October 31, the high school's assistant principal, Dwight Rogers, received a report from a teacher that D.W. "was possibly under the influence." D.W. was escorted by a school security officer to Rogers's office so Rogers could "begin [his] questioning and investigation of the situation." Rogers asked D.W. if he knew why he had been brought to the office and whether "he had anything on him that he should not have." Rogers also told D.W. that he "would try to work with him as much as possible to give him [as few] consequences as possible if it was something that [they] could work with."

D.W. stated he did know why he was brought to Rogers's office and had not done anything wrong. Rogers responded by telling D.W. that a School Resource Officer could "come in and assist [him] if need be." Rogers noticed that D.W. was "moving, shifting his arms and . . . body[, and] it appeared [to Rogers] like he was camouflaging something that he [might] be hiding on his person." Believing D.W. possessed "drugs or something," Rogers asked D.W. if "[D.W.] could just give it to [him] without [him] bringing in the . . . School Resource Officer." After a moment of reflection, D.W. "produced a knife that was in his pocket that was inside of his pants." D.W. said he did not "have any . . . drugs, but he had a knife but he didn't know how it got there." At no time during their interaction did Rogers yell at D.W., force D.W. to declare what he was hiding, or physically search D.W.

In June 2020, the Solano County District Attorney filed a petition under Welfare and Institutions Code section 602, subdivision (a), seeking to

2

have D.W. declared a ward of the juvenile court.[1]  The petition alleged one count of felony possession of a knife on school grounds.  (Pen. Code, § 626.10, subd. (a).)  Several months later, D.W. moved to suppress evidence of the knife.  In November 2020, the juvenile court held a combined suppression and jurisdictional hearing, and the following month it denied the motion to suppress and sustained the petition.  In February 2021, the court reduced the offense to a misdemeanor and placed D.W. on informal probation without wardship for six months in accordance with section 725, subdivision (a).

## II.
### DISCUSSION

A.    *The Juvenile Court Properly Denied the Motion to Suppress.*

1.    The law governing searches of students on school premises

The Fourth Amendment "applies to searches conducted by school authorities."  (*New Jersey v. T.L.O.* (1985) 469 U.S. 325, 337 (*T.L.O.*).)  However, "[t]he determination of the standard of reasonableness governing any specific class of searches requires 'balancing the need to search against the invasion which the search entails.'  [Citation.]  On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order."  (*Ibid.*)

In the school context, "the child's interest in privacy" must be weighed against "the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds."  (*T.L.O.*, *supra*, 469 U.S. at p. 339.)  Consequently, the high court has recognized "that maintaining security and order in schools requires a certain degree of

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

3

flexibility in school disciplinary procedures" and that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." (*Id.* at pp. 339–340.) Specifically, "school officials need not obtain a warrant before searching a student who is under their authority," nor do they need "probable cause" for a student search. (*Id.* at p. 340.) "Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the . . . action was justified at its inception,' [citation]; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.' " (*Id.* at p. 341.)

"Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." (*T.L.O.*, *supra*, 469 U.S. at pp. 341–342, fns. omitted.) "On appeal from a ruling denying a motion to suppress evidence, we 'exercise our independent judgment to determine whether, on the facts found by the court, the search was reasonable under the Fourth Amendment.' " (*In re Sean A.* (2010) 191 Cal.App.4th 182, 186.)

      2.    The search of D.W. was not unreasonable.

D.W. argues that Rogers lacked reasonable suspicion to conduct a search and that he only turned over the knife "in response to improper

4

threats and promises by [Rogers]." We are not persuaded. As to the first part of the inquiry, Rogers's interaction with D.W. was " 'justified at [the] inception' " in light of the teacher's report that D.W. "was possibly under the influence." (*T.L.O.*, *supra*, 469 U.S. at p. 341.) As to the second part of the inquiry, the aspects of Rogers's interaction with D.W. that led to the production of the knife were " 'reasonably related in scope to the circumstances which justified the interference in the first place,' " i.e., the teacher's report.[2] (*Ibid.*)

We start by discussing the first part of the inquiry. The teacher's report that D.W. was possibly under the influence in the morning hours was serious, and it was eminently reasonable for school officials and Rogers to investigate. "Deterring drug use by our Nation's schoolchildren" is "important—indeed, perhaps compelling." (*Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 661.) "School years are the time when the physical, psychological, and addictive effects of drugs are most severe," and drug-related problems "are visited not just upon the users, but upon the entire student body and faculty, as the educational process is disrupted." (*Id.* at p. 662.)

In his briefing, D.W. agrees that his initial escort and detention "passe[d] constitutional muster," but he argues that the teacher's report was unreliable because the teacher was not identified. We are not convinced. While it is true that the teacher was not identified, it was undisputed that the report came from a teacher. We agree with the Attorney General that *In*

---

[2] In light of our conclusion that D.W. was not unreasonably searched, we need not address the Attorney General's cursory suggestion that Rogers's questions to D.W. "were not a search." Similarly, we need not address D.W.'s argument that the production of the knife was not consensual, because the Attorney General does not contend otherwise.

*re Corey L.* (1988) 203 Cal.App.3d 1020 suggests that such a report from a teacher provides reasonable suspicion for school officials to investigate further. In *Corey L.*, Division Two of this court concluded that a school principal had reasonable suspicion to search a student for contraband based on information the principal received from other students. (*Id.* at pp. 1022, 1024.) If reasonable suspicion is established by a student reporting that another student may be in possession of contraband, it is even more established by a similar report from a teacher—an adult with institutional responsibilities over students. We reject D.W.'s argument that Rogers's interaction with D.W. was not justified because the report came from a teacher whose identity was not disclosed during the proceedings below.

D.W. also contends that Rogers was prohibited from interacting with him until Rogers performed a "prompt investigation to either confirm or dispel the report [of D.W.'s possibly being under the influence]," by taking measures such as smelling D.W.'s breath, observing his pupils, or asking him to follow a pen with his eyes. We disagree. We are aware of no authority requiring school officials to use these measures before initiating a conversation with the student and employing other investigative techniques. Rogers had a reasonable and growing suspicion that D.W. was possibly under the influence and possibly in possession of a controlled substance, and this suspicion allowed him to investigate further.

We therefore turn to the second part of our inquiry and address the argument that Rogers's search of D.W. was unreasonable. Since it is undisputed that Rogers did not physically search D.W., the more precise inquiry is whether Rogers's interaction with D.W. was reasonably related in scope to the teacher's report. We think the answer is clearly yes.

6

Rogers's suspicion that D.W. might be in possession of an illegal substance was reasonable at the outset by virtue of the teacher's report, and the suspicion was strengthened by D.W.'s attempt to camouflage or hide something during the interaction. True, during the interaction Rogers suggested to D.W. that Rogers would "work with him as much as possible to give him [fewer] consequences" if he cooperated, and Rogers also said he might ask a School Resource Officer for assistance if D.W. did not cooperate. But we reject D.W.'s argument that these comments demonstrated that D.W. was "coerced into turning out his pockets in the absence of reasonable suspicion." (Emphasis omitted.) "Questioning of a student by a principal, whose duties include the obligations to maintain order, protect the health and safety of pupils[,] and maintain conditions conducive to learning, cannot be equated with custodial interrogation by law enforcement officers." (*In re Corey L.*, *supra*, 203 Cal.App.3d at p. 1024.) As we have said, school officials have more leeway than do law enforcement officials when questioning students about possible illegal activities, and Rogers's comments to D.W. were, in our view, reasonable statements by a school official questioning a 15-year-old student whom a colleague had reported was possibly under the influence. The interaction was brief, and Rogers did not yell at D.W. or force him to say what he was hiding. In short, the circumstances surrounding the interaction were " 'reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.' " (*In re William G.* (1985) 40 Cal.3d 550, 564.) As a result,

7

the juvenile court properly denied the motion to suppress evidence of the knife.

  B.  *The Matter Must Be Remanded for the Juvenile Court to Consider a Deferred Entry of Judgment.*

  Section 700.1 states that a motion to suppress evidence "obtained as a result of an unlawful search or seizure shall be heard prior to the attachment of jeopardy." D.W. argues that the juvenile court violated this provision by holding the suppression hearing at the same time as the jurisdictional hearing. He also argues that his counsel below was ineffective for failing to request a deferred entry of judgment.

  Although the Attorney General claims that D.W. forfeited these arguments by not raising them below (see *In re Sheena K.* (2007) 40 Cal.4th 875, 880), he concedes that D.W.'s counsel was ineffective by failing to object to the unitary hearing. The Attorney General states if the suppression motion had been heard before the jurisdictional hearing, D.W. might have sought a deferred entry of judgment, and "it appears reasonably probable" that the court would have granted such a request. (See *In re A.I.* (2009) 176 Cal.App.4th 1426, 1434 [minor may pursue motion to suppress and accept deferred entry of judgment after denial of suppression motion].)

  We agree with the parties that a conditional reversal is proper since D.W.'s counsel never asked for a deferred entry of judgment even though D.W. was eligible for such relief. As a result, we need not decide whether conducting the suppression hearing at the same time as the jurisdictional hearing constituted prejudicial error by limiting D.W.'s opportunity to seek a deferred entry of judgment.

## III.
### DISPOSITION

The jurisdictional and dispositional orders are conditionally reversed, and that the matter is remanded for the juvenile court to evaluate D.W. for a deferred entry of judgment.  If the court grants D.W. a deferred entry of judgment, it shall vacate its jurisdictional and dispositional orders.  If the court denies D.W. a deferred entry of judgment, it shall reinstate those orders.  (See *In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123–1124.)

                                                  _____

                                                  Humes, P.J.

We concur:


_____

Margulies, J.


_____

Banke, J.

*People v. D.W.*  A162067