Filed 4/21/16 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

In re RAFAEL C., a Person Coming
Under the Juvenile Court Law.

THE PEOPLE,

      Plaintiff and Respondent,

v.

RAFAEL C.,

      Defendant and Appellant.

A143376

(Contra Costa County
Super. Ct. No. J1400437)

It is ordered that the opinion filed herein on March 25, 2016, be modified as follows:

On page 20, delete the first sentence of line 2, which reads: "It found notice had been given as required by law."

The petition for rehearing is denied. The petition "restates arguments that were raised and considered on appeal." (*Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1308.) In addition, the petition seeks to raise arguments not included in appellant's briefs. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092 [arguments cannot be raised for first time in petition for rehearing].) The court notes the petition

improperly cites unpublished case law.  (Cal. Rules of Court, rule 8.1115(a) ["an opinion of a California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by . . . a party in any other action"].)

There is no change in judgment.

Dated _____                          _____ P.J.

Superior Court of the County of Contra Costa, No. J1400437, Rebecca C. Hardie, Judge.

Amanda K. Roze, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General, Donna M. Provenzano and Laurence K. Sullivan, Supervising Deputy Attorneys General for Plaintiff and Respondent.

A143376

Filed 03/25/16 (unmodified version)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re RAFAEL C., a Person Coming Under the Juvenile Court Law.** | |
| **THE PEOPLE,** <br> **Plaintiff and Respondent,** <br> **v.** <br> **RAFAEL C.,** <br> **Defendant and Appellant.** | **A143376** <br><br> **(Contra Costa County** <br> **Super. Ct. No. J1400437)** |

Rafael C. (Minor) appeals from an order of the juvenile court sustaining a petition filed pursuant to Welfare and Institutions Code section 602.[1] The petition arose from an incident at Minor's high school in which a firearm was discovered on campus. School administrators suspected Minor's involvement, and in the course of questioning him, they seized and searched his cell phone. Interspersed with the text messages on the phone were a number of digital images, including a photograph of Minor holding what appeared to be the firearm found on campus. When the prosecution sought to use these images as evidence in the proceeding below, Minor unsuccessfully moved to suppress them. The

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II, IV, V, VI, VII, and VIII.

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

1

juvenile court found Minor had possessed an assault weapon, and it declared him a ward of the juvenile court.

On appeal, Minor challenges the denial of his motion to suppress. In the published portion of our opinion, applying the twofold test established in *New Jersey v. T.L.O* (1985) 469 U.S. 325 (*T.L.O.*), we conclude the search of Minor's cell phone was reasonable. Considering all the circumstances, the juvenile court properly found the search was justified at its inception and permissible in scope. The lower court thus did not err in denying the motion to suppress.

In the unpublished portion of our opinion, we examine Minor's other contentions, and we find most of them unmeritorious. We agree with Minor, however, that (1) the dispositional order must be modified to reflect his maximum term of confinement and (2) the matter must be remanded to the juvenile court so that it may calculate the custody credits to which he is entitled. We affirm the judgment in all other respects.

PROCEDURAL HISTORY

The original petition, filed April 28, 2014, alleged Minor came within section 602 because on or about February 21, 2014, he possessed an assault weapon (Pen. Code, § 30605, subd. (a); count 1) and a short-barreled rifle (Pen. Code, § 33215; count 2).

Following hearings on August 29 and September 2, 2014, the juvenile court denied a motion to suppress evidence, sustained the petition, and found the offenses to be felonies.

On October 3, 2014, the juvenile court declared indefinite wardship, removed Minor from the custody of his parents, committed him to the Orin Allen Youth Rehabilitation Facility (OAYRF) for a regular six-month program, plus an additional 90-day conditional release/parole period. It also imposed various conditions of probation. Minor filed a timely appeal.

STATEMENT OF FACTS

We summarize below the facts of the offenses. As required when the juvenile court's findings are challenged under the substantial evidence rule, we must view the evidence in the light most favorable to the prosecution, and we presume the existence of

2

every fact the court could deduce from the evidence.  (*In re Gary H.* (2016) 244 Cal.App.4th 1463.)  Additional facts relating to the particular legal issues raised on appeal are set forth in the discussion section of this opinion.

Three witnesses, Antioch High School Assistant Principals Jason Murphy and Jarrod Bordi, and Antioch Police Officer Daniel Hopwood, testified at a combined suppression/jurisdictional hearing.  We first recount the evidence relevant to the suppression motion before turning to additional evidence presented in support of jurisdiction.

*Evidence Presented in Connection With Minor's Motion to Suppress*

On the morning of February 21, 2014, a campus supervisor at Antioch High School became concerned about suspicious behavior by two students, who lacked corridor passes or a reason for their presence outside class.  It was believed one of the students had a firearm he had discarded in a portable trash can on campus.  The students were placed in adjoining offices inside the vice principals' suite and questioned about the firearm.  The firearm (People's exhibit 1A) and its magazine cartridge (People's exhibit 1B) were seized from a trash can and taken to the principal's office where Murphy saw them.  Murphy and other vice principals acted to secure the school and to provide direction to the supervisors.

Murphy participated in questioning the two students, and he communicated with a supervisor to ensure no students were in the hallways without a pass and to detect any suspicious student behavior.  During a five-minute passing period, students passed the vice principals' offices in the main arcade of the school only once, which was the normal behavior of students changing classrooms in that timeframe.  Murphy and the supervisor noticed Minor exhibiting "odd" behavior; he kept walking back and forth past the vice principals' offices.  Minor passed by a number of times and looked into the office.

At one point, Minor entered the office, which students are forbidden to do without a pass or permission.  Because of the firearm in the principal's office, the administrators immediately "shoo[ed]" Minor and other students out.  Other students left without questioning the situation, and Minor alone was "slow dragging" and "kind of lingered"

3

by the office door. Eventually, Murphy asked Minor into the office to find out why he was there and determine the reason for his behavior. The administrators were concerned because they did not yet know if other parties were involved in bringing the firearm onto campus.

A supervisor instructed Minor to come into the office, but Minor ignored the request and kept walking. Murphy sent the supervisor after Minor, but Minor ignored the supervisor's call to return. Instead, Minor hurriedly walked away without turning around. The supervisor finally caught up with Minor and walked back with him to the office.

Minor was brought to a vice principal's office where he was questioned. Minor was asked why he had lingered outside and did not come back as requested. Minor became "physically fidgety" and "immediately reached down into his pocket." At the time, Murphy knew the student with the firearm had concealed it in his pants leg before he had discarded it into the trash can. When Minor reached into his pocket, Murphy was "concerned that maybe this student also had a concealed weapon" for which he was reaching, and told his colleagues, " 'Don't let him keep it in his pocket.' "

Minor resisted the administrators and he and they fell to the ground in a struggle. Murphy reached into Minor's pocket and realized he was resisting the administrators in order to try to interact in some way with his cell phone, so he removed the phone from Minor's pocket. Minor was then released from restraint and asked what he was doing, but he did not respond.

Murphy testified that the principal's protocol was that the vice principals are to search a student's cell phone on reasonable suspicion of a communication that could put a student or staff at risk of harm. Murphy was concerned Minor had used the phone to communicate with the student in custody about the firearm or possibly to communicate about another firearm or weapon. Murphy was aware the student with the firearm knew Minor and testified that Minor's academic assistant principal knew Minor was a friend of that student. Murphy was also aware that a verbal altercation had occurred that morning

4

when the other student was "attempting to communicate with people on his cell phone while he was in the office being interviewed about having the firearm."

Murphy determined Minor had somehow turned off the cell phone. Not knowing how to turn the phone on, Murphy plugged it into a USB cable, which brought the phone back online. Minor's "collection of text messages and things" included photographs that "showed up" on the phone when "we brought it back online," and "we were to able to open it up[.]" The photographs were of students holding the confiscated firearm Murphy had seen earlier that morning in the principal's office. Murphy plugged the phone into the office computer and was able to take a screenshot of the photographs on the phone. The screenshots were printed, and the photographs in the computer system deleted. Over foundation and best evidence objections, Murphy identified a packet of photographs (People's exhibit 2) as the photographs he saw "on the student's phone and also on our computer when we plugged it in." Photographs in the exhibit packet depict Minor holding the firearm. Other photographs depict the same firearm. Murphy testified Minor's appearance in the photographs is consistent with how he looked on or about February 2014. Based on the evidence, the juvenile court found a reasonable administrative school search and denied the motion to suppress.

*Further Evidence Regarding Jurisdiction*

At the time of the incident, Bordi was Minor's assistant principal for discipline at the school, which Minor had attended for the entire year. Bordi was involved in the investigation of the two students who brought the gun to school. He testified the administrators and supervisors were "really concerned" when Minor "seemed to be coming into the office, very interested, wanting to know what was going on. And we became more concerned on what connection he had to some of our other students."

That morning, Bordi's colleague recovered the photographs from the cell phone showing Minor holding the weapon, and Bordi had the opportunity to speak with Minor about his potential involvement in the incident with the gun at school. When questioned, Minor became irate and screamed profanities. Minor told Bordi, " 'Those are my photos. You can't do that.' " Minor got up and postured towards the vice principal. Campus

5

supervisors were called; Minor became belligerent on their arrival and had to be subdued. The Antioch police were alerted that the student had lost control. Bordi suspended Minor that day.

Bordi testified Minor's appearance as depicted on the photograph on the first page of People's exhibit 2 was consistent with how he looked on February 21, 2014, including his wearing a sweatshirt like the one he had on in the photograph. Bordi reviewed Minor's attendance record, and there was no indication of any out-of-state travel.

Officer Hopwood testified he responded to the school on the report of a student with a firearm, and in the principal's office he took custody of the confiscated firearm and magazine cartridge. Hopwood identified People's exhibit 1A as a .22-caliber Ruger shortened to an 18.5-inch overall length and six-inch barrel. The gun bore the serration marks of obvious cuts from the removal of portions of the buttstock and the barrel of a rifle that originally was significantly longer. The alterations resulted in a pistol grip more convenient for close quarters concealment. Hopwood also testified the 30-round magazine attaches and detaches "right in front of the trigger housing" and "outside the pistol grip." The photograph on the first page of People's exhibit 2 shows the detachable magazine was attached in that forward position outside the pistol grip. People's exhibit 1B, a 30-round detachable magazine, was attached to the gun when taken into the officer's custody. A function check by Officer Hopwood showed the gun was operable. Officer Hopwood identified the weapon depicted in the photographs in People's exhibit 2 as the weapon he found at school that day and the "same gun I picked up that day I logged into evidence. And I brought it to and from the courtroom."

At the close of the evidence, the juvenile court again overruled the foundation objection to People's exhibit 2. The court sustained the petition beyond a reasonable doubt. It also found the offenses to be "serious felonious conduct," and found notice was given as required by law.

## DISCUSSION

Minor raises a number of arguments on appeal. He contests the juvenile court's evidentiary rulings, its subject matter jurisdiction, its ruling on his motion to suppress,

and its factual findings.  He also contends it failed to fulfill certain statutory obligations, abused its discretion by declaring his offenses felonies, and imposed unconstitutional probation conditions.  Finally, Minor argues the dispositional order must be modified to correct various defects.  We will address these arguments in the order Minor presents them.

I.    *The Digital Photographs Taken from Minor's Cell Phone Were Sufficiently Authenticated.*

Minor argues the juvenile court erred by admitting digital photographs found on his cell phone because the images were inadequately authenticated and irrelevant.  He contends that without these photographs there is insufficient evidence to support the judgment.  We will address these contentions after setting forth the relevant law and our standard of review.

A.    *Governing Law and Standard of Review*

Under the Evidence Code, a photograph is classified as a "[w]riting."  (Evid. Code, § 250.)  Before a writing may be received in evidence, it must be authenticated.  (Evid. Code, § 1401, subd. (a).)  "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts as by any other means provided by law."  (Evid. Code, § 1400.)  "[T]he proponent's burden of producing evidence to show authenticity (§ 1400) is met 'when sufficient evidence has been produced to sustain a finding that the document is what it purports to be.  [Citation.]' [Citation.]  The author's testimony is not required to authenticate a document (§ 1411); instead, its authenticity may be established by the contents of the writing (§ 1421) or by other means (§ 1410 [no restriction on 'the means by which a writing may be authenticated'])."  (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1435 (*Valdez*).)  " '[I]t is well settled that the showing may be made by the testimony of anyone who knows that the picture correctly depicts what it purports to represent.'  [Citations.]"  (*People v. Chism* (2014) 58 Cal.4th 1266, 1303.)  " 'As long as the evidence would support a finding of authenticity, the writing is admissible.  The fact conflicting

7

inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility. [Citations.]' [Citation.]" (*Valdez, supra,* 201 Cal.App.4th at p. 1435.)

The authenticity of a writing is a preliminary fact. (Evid. Code, § 403, subd. (a)(3).) "[T]he trial court must determine whether the evidence is sufficient to permit the jury to find the preliminary fact true by a preponderance of the evidence[.]" (*People v. Marshall* (1996) 13 Cal.4th 799, 832.) In so doing, "the court need only conclude that a prima facie showing has been made that the photograph is an accurate representation of what it purports to depict." (*In re K.B.* (2015) 238 Cal.App.4th 989, 997.) " 'The decision whether the foundational evidence is sufficiently substantial is a matter within the court's discretion.' [Citations.]" (*People v. Bacon* (2010) 50 Cal.4th 1082, 1103.) Accordingly, on appeal, the juvenile court's decision as to whether the foundational evidence is sufficient is reviewed for abuse of discretion. (*In re K.B., supra,* 238 Cal.App.4th at p. 995.)

B.    *The Juvenile Court Did Not Abuse its Discretion in Concluding the Photographs Were Sufficiently Authenticated*

Minor contends the images contained in People's exhibit 2 were not sufficiently authenticated. His argument has a legal and a factual component. As a legal matter, Minor argues heightened standards of authentication should be required for the images. In Minor's view, "[p]roper authentication of the images required the prosecution to identify the scene and its coordinates in time and place, and to show that the images were genuine for the purpose offered." He further contends that "since the images were from a cell phone, more precise technical details and a higher degree of scrutiny was required than for . . . film photographs[.]" On the facts, Minor disputes the sufficiency of the authentication evidence on which the trial court relied, and he suggests the images might not have been taken by the cell phone or might have been faked or manipulated in some way. We disagree with Minor on both counts.

8

1. *There Are No Heightened Authentication Requirements for Digital Images*

First, contrary to Minor's contentions, California law does not subject digital images such as those at issue here to heightened foundational standards. Indeed, in *People v. Goldsmith* (2014) 59 Cal.4th 258 (*Goldsmith*), a case upon which Minor relies, the California Supreme Court expressly declined "to require a greater showing of authentication for the admissibility of digital images merely because in theory they can be manipulated." (*Id.* at p. 272.) Instead, it concluded "[t]he standard foundational showing for authentication of a photograph, video, or other writing will suffice" for digital images. (*Ibid.*) "No elaborate showing of the accuracy of the recorded data is required." (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1003 [affirming sufficiency of authentication of digital audio recording].) Thus, under *Goldsmith,* the foundation for a digital image may be supplied by the person taking the photograph or by a person who witnessed the event being recorded. (*Goldsmith, supra,* 59 Cal.4th at p. 268.) Alternatively, authentication "may be supplied by other witness testimony, circumstantial evidence, content and location. [Citations.] Authentication also may be established 'by any other means provided by law' (§ 1400), including a statutory presumption." (*Ibid.*)

2. *The Evidence of Authentication Was Sufficient*

People's exhibit 2 was offered to show Minor had possessed a sawed-off rifle on or about the charged date. The images at issue were found intermingled with texts collected on Minor's cell phone. The phone itself was in Minor's possession when the images were discovered. The juvenile court could properly consider this circumstantial evidence in determining whether the images had been sufficiently authenticated. (See *People v. Smith* (2009) 179 Cal.App.4th 986, 1002 [documents sufficiently authenticated where they were found in defendant's office intermingled with other documents authenticated by testifying victims].) Moreover, Murphy identified People's exhibit 2 as the printout he made of the photographs he discovered on the cell phone confiscated from Minor, photographss that were later uploaded to the school computer. He testified he had

9

taken the cell phone from Minor's pocket after a struggle in which Minor attempted to retain possession of the phone.

The parties do not dispute Minor is depicted in some of the photographs, and there is also no dispute that the item he is depicted holding in the photograph on the first page at least appeared to be the firearm confiscated at school. Murphy identified the first page of People's exhibit 2 as depicting Minor holding the confiscated firearm he had identified as the one in the principal's office that morning at school. Officer Hopwood identified the firearm depicted in the exhibit as the gun and the attached magazine he placed in evidence in the principal's office that day. Murphy and Bordi testified Minor's appearance as depicted in the photographs was consistent with how he looked on or about February 21, 2014, including his wearing a sweatshirt like the one he had on in the photographs.

In addition, there was other corroborating evidence before the trial court. The court could reasonably infer Minor had struggled with the administrators to prevent them from finding the photographs on his cell phone after the gun was confiscated. Indeed, when Bordi spoke with Minor about implementing a suspension for his behavior that day, Minor became irate and responded, " 'Those are my photos. You can't do that.' " Such a statement could be viewed as an admission by Minor that the photographs were authentic. (Evid. Code, § 1414, subd. (a) [writing may be authenticated by evidence that "party against whom it is offered has . . . admitted its authenticity"]; *People v. Lynn* (1984) 159 Cal.App.3d 715, 735 [defendant's handwritten notes sufficiently authenticated under Evid. Code, § 1414 where defendant told inmate who turned notes over to authorities that he " 'really fucked up, giving the notes over' "].) Given all of this evidence, the trial court's conclusion that People's exhibit 2 was properly authenticated was not an abuse of discretion.[2]

---

[2] Citing *People v. Beckley* (2010) 185 Cal.App.4th 509 (*Beckley*), Minor contends the digital images at issue in this case "present greater accuracy and reliability concerns" than ordinary photographs. Minor quotes *Beckley's* observation that "digital photographs can be changed to produce false images" (*id.* at p. 515), and he speculates the

II.     *California Has Subject Matter Jurisdiction Over the Offenses*

Minor contends the trial court lacked subject matter jurisdiction, because the evidence failed to establish the offenses were committed within the State of California. According to Minor, the prosecution based the charges on the photographs recovered from Minor's cell phone, and he claims there was no evidence of where those photographs were taken. Thus, in his view, the trial court lacked subject matter jurisdiction.

Minor suggests the evidence was lacking because there was no GPS data attached to the photographs showing where they were taken. He cites no authority holding such evidence is necessary to establish where photographs were taken, and we decline to adopt any such requirement. Here, the People offered significant circumstantial evidence upon which the juvenile court could rely in concluding the offense was committed in California. For example, Minor had attended Antioch High School in Contra Costa County for the entire year. On the date of the offense, the firearm Minor was shown holding in People's exhibit 2 was brought to his school and placed in a trash can by a student known to him. School officials testified that Minor's appearance in the photographs with the firearm matched his appearance on or about that date, including the sweatshirt he wore to school at the time. His attendance record for the relevant time period showed no out-of-state absences. Perhaps more important, Minor's suspicious conduct immediately before and after discovery of the photographs permitted the trial court to find he was aware of the firearm's presence at the school. His conduct could be read as reflecting awareness that the photographs inculpated him in the crime.

Moreover, Minor's opening brief points to absolutely no evidence suggesting he had ever been absent from the state. Although Minor's trial counsel alluded in his

---

photographs taken from Minor's cell phone might have been manipulated. For this reason, Minor appears to suggest the People were required to present more extensive foundational evidence to authenticate them. But as we have noted, Minor's argument is foreclosed by *Goldsmith.* (*Goldsmith, supra,* 59 Cal.4th at p. 272 [refusing "to require a greater showing of authentication for the admissibility of digital images merely because in theory they can be manipulated"].)

questioning to the possibility that Minor might have gone to Reno or Las Vegas at some unspecified time, Minor's briefs offer nothing other than speculation on this point. Thus, the trial court could properly rely on the circumstantial evidence set forth above to conclude Minor committed the offense in California. The value of the evidence is not diminished by Minor's unfounded suggestion that the crime might have occurred elsewhere.

III.     *Minor's Motion to Suppress Was Properly Denied*

Minor contends the juvenile court erred in denying his motion to suppress evidence because the search of his cell phone lacked sufficient justification, was excessively intrusive, and required a warrant. We will examine these contentions after explaining the standards governing searches of students by school officials and the scope of our review.

A.     *Governing Law and Standard of Review*

"[S]chool officials may conduct a search of the student's person and personal effects based on a reasonable suspicion that the search will disclose evidence that the student is violating or has violated the law or a school rule. 'Reasonable suspicion' is a lower standard than probable cause. Ultimately, the legality of the search 'depend[s], simply, on the reasonableness, under all the circumstances, of the search.' " (*In re Cody S.* (2004) 121 Cal.App.4th 86, 91, fn. omitted (*Cody S.*), quoting *T.L.O., supra,* 469 U.S. at p. 341.) In *T.L.O.,* "the court held that teachers and school officials need not obtain a warrant or have probable cause to search a student. 'Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.' [Citation.] The court set forth a twofold inquiry for determining the reasonableness of a student search. The action must be 'justified at its inception' and the search, as actually conducted, must be ' "reasonably related in scope to the circumstances which justified the interference in the first place." ' [Citation.] 'Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of

12

the school.  Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.'  [Citation.]"  (*In re William V.* (2003) 111 Cal.App.4th 1464, 1469 (*William V.*).)

On appeal from the denial of Minor's motion to suppress, we review the evidence in the light most favorable to the juvenile court's ruling.  (*William V., supra,* 111 Cal.App.4th at p. 1468.)  We must uphold the lower court's express or implied findings if they are supported by substantial evidence, but we independently determine whether those facts support the juvenile court's legal conclusions.  (*Ibid.*)  "As far as the legality of the search is concerned, it is irrelevant that the court relied on an erroneous legal theory if the court's ruling was correct on any legal theory which is applicable to the case." (*Cody S., supra,* 121 Cal.App.4th at p. 92, fn. 4.)  Finally, because the presence of weapons on school campuses is now an unfortunate fact of modern American life, "[w]e must be cognizant of this alarming reality as we approach our role in assessing appropriate responses by school administrators to campus safety issues."  (*In re J.D.* (2014) 225 Cal.App.4th 709, 714.)

B.      *The Search Was Justified at its Inception*

Minor contends the search of his cell phone was not justified at its inception because there was no reasonable suspicion he was guilty of wrongdoing.  We disagree. The evidence before the juvenile court showed a firearm and its magazine cartridge were seized from a trash can where they had been discarded.  Two students who were believed to have been in possession of the firearm were brought into an administrator's office for questioning.  Minor was present in the hallway outside the office where the student with the gun was detained, and he was the only person walking back and forth outside the office.  Minor entered the office, and he lingered at the door even after being told to leave.  When a school official asked Minor to come into the office, Minor walked away quickly and ignored the official's order to stop.  After he was taken into a vice principal's office, asked what he was doing outside the office and why he had ignored the official's directions, Minor immediately started fingering the cell phone in his pocket.  He then

13

physically resisted when school administrators tried to keep him from manipulating his phone and refused to explain why he had resisted them.  Minor was also acquainted with the student who had brought the concealed weapon onto campus, and that student had triggered an incident himself by trying to communicate with someone on a cell phone during his own questioning.[3]

Based on these facts, the school officials had "reasonable grounds for suspecting that the search [would] turn up evidence that the student ha[d] violated or [was] violating either the law or the rules of the school." (*William V., supra,* 111 Cal.App.4th at p. 1469.)  This is particularly true when one considers the gravity of the situation that initially gave rise to the search—the discovery of a firearm and magazine on school grounds.  (See *In re J.D., supra,* 225 Cal.App.4th at pp. 716-717 [upholding as reasonable locker search and other measures taken by school officials after receiving report that student involved in earlier shooting was present on campus].)  "The need of schools to keep weapons off campuses is substantial.  Guns . . . pose a threat of death or serious injury to students and staff.  The California Constitution, article I, section 28, subdivision [(f)(1)], provides that students and staff of public schools have 'the inalienable right to attend campuses which are safe, secure and peaceful.' " (*In re Latasha W.* (1998) 60 Cal.App.4th 1524, 1527.)  Here, the facts outlined above— particularly Minor's evasive behavior and resistance to school officials—suggested he was either involved in a crime or was trying to hide evidence of one.  (*In re H.M.* (2008) 167 Cal.App.4th 136, 144 [minor's unusual, suspicious behavior and flight from scene "strongly suggested criminal activity was afoot"].)  The juvenile court could properly find the search justified at its inception.

---

[3] We need not ask whether or to what extent the school officials relied on these particular facts.  Their search will be found reasonable under the Fourth Amendment " ' "as long as the circumstances, viewed *objectively,* justify [the] action." [Citation.]' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.)

14

C.     *No Warrant Was Required*

Minor also contends school officials were required to obtain a warrant before searching the data on his cell phone.  In a brief, one-paragraph argument to the juvenile court, Minor asserted public school officials may not search a cell phone without a warrant.  He relied on the United States Supreme Court's decision in *Riley v. California* (2014) 134 S.Ct. 2473 (*Riley*).  At the hearing on the motion to suppress, however, Minor's trial counsel did not mention the warrant requirement, arguing instead that the search was not justified at its inception and was unreasonable in scope.  Trial counsel also argued that *T.L.O.* "sets out the two-pronged determination of reasonableness[.]"  Thus, while Minor's contentions on appeal focus on *Riley,* his counsel did not bring that case up at the hearing on Minor's motion to suppress.  The People therefore contend Minor has forfeited this argument.  Even if the argument has been properly preserved for appeal, it is unavailing.

Minor's argument suffers from a number of flaws.  First, in contending that a warrant was required before school officials could search the contents of his cell phone, Minor relies heavily on *Riley*.  There, however, the United States Supreme Court explicitly based its holding on the applicability of the warrant requirement.  (*Riley, supra,* 134 S.Ct. at p. 2493.)  In contrast, *T.L.O.* "recognized *an exception* to the warrant and probable cause requirement for searches conducted by public school officials." (*In re Joseph G.* (1995) 32 Cal.App.4th 1735, 1739, italics added.)  As the United States Supreme Court explained, "[t]he warrant requirement, in particular, is unsuited to the school environment:  requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools.  Just as we have in other cases dispensed with the warrant requirement when 'the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search,' [citation], we hold today that school officials need not obtain a warrant before searching a student who is under their authority." (*T.L.O., supra,* 469 U.S. at p. 340; see also *Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 656 ["Fourth Amendment

15

rights . . . are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children."].)  By overlooking this key distinction between *T.L.O.* and *Riley,* Minor fails to satisfy his burden of demonstrating error.  (Cf. *People v. Williams* (1999) 20 Cal.4th 119, 129 [in making motion to suppress, defendants must do more than assert that search was without a warrant; defendants must also show why no exception to warrant requirement applies].)

Second, as the People point out, *Riley* concerned "the reasonableness of a warrantless search incident to a lawful arrest."  (*Riley, supra,* 134 S.Ct. at p. 2482.)  The individuals subjected to the searches in *Riley* were both adults, and neither arrest occurred in the school context.  (See *id.* at pp. 2480, 2481-2482 [one petitioner searched in conjunction with arrest for firearms possession after traffic stop and the other searched after arrest for distribution of crack cocaine].)  Although Minor admits "the matter of a school search was not before the *Riley* Court,"  he offers us no case applying *Riley* to the search of a high school student's cell phone.  *Riley* did not address the particular factual situation before us, and cases are not authority for propositions not considered therein. (E.g., *People v. Knoller* (2007) 41 Cal.4th 139, 154-155.)

Third, quite apart from the absence of authority on the point, *Riley* itself acknowledged certain "fact-specific threats may justify a warrantless search of cell phone data."  (*Riley, supra,* 134 S.Ct. at p. 2494.)  The *Riley* court alluded to hypothetical situations such as "a suspect texting an accomplice who, it is feared, is preparing to detonate a bomb[.]"  (*Ibid.*)  Here, school officials were confronted by a situation in which a loaded firearm had been discovered on school property.  They were concerned Minor could be using his cell phone to communicate with students who might possess another firearm or weapon the officials did not know about.  In these circumstances, " '[t]he special need for an immediate response to behavior that threatens . . . the safety of schoolchildren and teachers . . . justifies the Court in excepting school searches from the warrant and probable-cause requirement, and in applying a standard determined by

16

balancing the relevant interests.' "[4]  (*In re J.D., supra,* 225 Cal.App.4th at p. 715, quoting *T.L.O., supra,* 469 U.S. at p. 353 (conc. opn. of Blackmun, J.).)

Finally, the search in this case occurred before the United States Supreme Court issued its opinion in *Riley*.  The People argue that prior to *Riley, T.L.O.* furnished the standard for judging the reasonableness of any search conducted on a student on school grounds.  Thus, they contend the school officials in this case conducted the challenged search "in objectively reasonable reliance on binding appellate precedent."  (*Davis v. U.S.* (2011) 131 S.Ct. 2419, 2423-2424 (*Davis*).)  The search "therefore was not subject to the exclusionary rule."  (*People v. Youn* (2014) 229 Cal.App.4th 571, 573.)  We agree with the People.  Even if we assume the holding in *Riley* applies to this situation, we decline to hold the school officials were bound by a standard that did not yet exist.[5]

D.       *The Juvenile Court Applied the Proper Standard*

Quoting a two-paragraph excerpt from the juvenile court's ruling on the suppression motion, Minor contends the court applied the wrong standard in denying his motion.  But Minor's selective quotation omits the vast bulk of the trial judge's comments, which total almost three pages in the reporter's transcript.  Thus, Minor bases his contention on an artificially truncated version of the court's explanation for its ruling.  Looking at the full ruling, we discern no error.

---

[4] This also suffices to answer Minor's contention that the search was excessively intrusive.  Minor asserts the search into the data on the phone was unjustified and that any search should have been limited to determining whether there had been weapons-related communications.  Here, the photographs were intermingled with Minor's text messages.  Given the danger posed by the possible presence of firearms on campus, the circumstances certainly justified the use of "swift and informal . . . procedures" to ascertain the extent of the threat.  (*T.L.O., supra,* 469 U.S. at p. 340.)

[5] Minor contends the People may not rely on *Davis* because they did not raise this argument in the trial court and thus have not preserved it for appeal.  Minor misapprehends both the parties' respective burdens on appeal and the role of this court.  As respondent, the People may urge any ground for affirmance supported by the record.  (E.g., *L.K. v. Golightly* (2011) 199 Cal.App.4th 641, 644.)  And as an appellate court, our "review is confined to the correctness or incorrectness of the trial court's [suppression] ruling, not the reasons for its ruling."  (*People v. Superior Court* (2012) 204 Cal.App.4th 1004, 1011.)

Although the juvenile court did not quote verbatim the language from controlling case law, it is clear it had the proper test in mind in making its ruling. The court explained it had "to determine whether or not the school administrators acted reasonably under all of the circumstances that they were presented with at the time." (See *T.L.O., supra,* 469 U.S. at p. 341 ["the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search"].) The court reviewed the circumstances confronting the school officials and commented on Minor's suspicious behavior. It then noted, "you do have to see whether or not [the search] was reasonable to deal with the specific and special needs or the issues presented at the time." (See *id.* at p. 342, fn. omitted ["a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction"].) It noted the school administrators feared there might be other guns on campus, a possibility that "presents a very extreme risk to the student population." The court found "it was justified to look at the phone itself to see if [Minor] was indeed communicating, as it appeared he was manipulating the object, and the other student involved who did bring the gun was attempting to use his cell phone to communicate." It therefore found the search "reasonable under the circumstances, and . . . limited in scope and in intrusion." (See *ibid*.) This approach was fully consistent with *T.L.O.* and the California cases applying it.

IV. *The Prosecutor and the Juvenile Court Complied with their Obligations Under the Deferred Entry of Judgment Act*

Minor next contends the judgment must be reversed because the prosecutor and the juvenile court failed to comply with their mandatory duties under the Deferred Entry of Judgment Act (DEJ Act; § 790 et seq.), thereby violating his right to due process. Minor argues the prosecution failed to comply with its duty to provide notice of his eligibility for DEJ and notice of a DEJ hearing. He further argues the court failed to comply with its mandatory duties of personally serving the DEJ citation and holding a suitability hearing.

18

A.    *Factual Background*

On April 28, 2014—the day the petition was filed—the prosecutor filed a Judicial Council form JV-750 "Determination of Eligibility Deferred Entry of Judgment—Juvenile." That same day, the prosecutor also filed Judicial Council form JV-751, a "Citation and Written Notification for Deferred Entry of Judgment—Juvenile." The latter form advised Minor that if the court granted DEJ, he would be required "[t]o admit that he . . . committed the offense or offenses alleged to have been committed." (See § 791, subd. (a)(3) [prosecutor's notification shall include "[a] clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant a deferred entry of judgment with respect to any offense charged in the petition, provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment"]; Cal. Rules of Court, rule 5.800(d)(1)-(2) [court may grant DEJ "[i]f the child admits each allegation contained in the petition as charged and waives the right to a speedy disposition hearing"].) The form JV-751 does not state when the hearing will be held. The following day, the prosecutor filed a notice of hearing on the petition, advising Minor and his parents of a hearing on May 14, 2014, for "formal reading of petition, advisement of rights, and plea."

Minor did not appear at the May 14 hearing, and it was continued because the public defender appearing on Minor's behalf indicated there was "an office conflict and personal conflict." At the continued hearing on August 8, 2014, Minor appeared with counsel. Counsel informed the court of Minor's new address and waived reading of the petition and formal advisement of rights. Minor's counsel also entered a denial of the charges "and set the matter both for contest . . . with an intervening pretrial conference."

Minor's counsel addressed the court regarding what he called "some type of mix up at his initial arraignment[.]" According to trial counsel, Minor and his father had indeed come to court on the day of the arraignment but had waited outside the wrong courtroom. Addressing Minor's failure to appear, the juvenile court noted the notice to appear had been mailed at or about the same time the petition was filed. The court stated

it had just been advised that Minor and his parents had a new address, but it noted none of the documents had been returned. It found notice had been given as required by law.

At the close of the August 8 hearing, the juvenile court set a pretrial hearing for August 13. The clerk's transcript shows pretrial hearings were held on both August 13 and 14 at which Minor appeared with counsel, but the record before us contains no reporter's transcripts of those hearings. The minute order from the August 14 hearing states the court set a contested jurisdiction hearing for August 29. On that date, Minor, his parents, and counsel all appeared for the contested hearing.

B.      *Minor Has Not Shown He Failed to Receive Notice of DEJ Eligibility*

Section 790, subdivision (b) requires the prosecutor to make information about a minor's suitability for DEJ "available to the minor and his or her attorney." Implementing the statutory command of section 792, California Rules of Court, rule 5.800(c) requires that the juvenile court "issue *Citation and Written Notification for Deferred Entry of Judgment-Juvenile* (form JV-751) to the child's custodial parent, guardian, or foster parent." The form must be personally served on the "custodial adult" at least 24 hours before the time set for the appearance hearing. (Cal. Rules of Court, rule 5.800(c).)

On this record, Minor has failed to demonstrate he did not receive notice of his eligibility for DEJ. He complains there is no proof of service in the record demonstrating the DEJ forms were served on him and his parents. But at the August 8 hearing, Minor, through counsel, represented to the trial court that he had come to court on May 14. Obviously, if this representation were true, then it would be clear Minor received notice of the hearing. And since it appears the petition and all of the notices were sent to the same address, we would presume he also received copies of forms JV-750 and JV-751.

Moreover, in the absence of evidence to the contrary, we must presume the juvenile court properly performed its official duty. (Evid. Code, § 664; see § 792 [requiring issuance of citation to custodial parent]; Cal. Rules of Court, rule 5.800(c) [court must issue Judicial Council form JV-751 to minor's custodial parent].) It is Minor's "burden to provide this court with a complete record on appeal." (*In re Joshua*

20

*S.* (2011) 192 Cal.App.4th 670, 681, fn. 7.) As the People note, Minor did not include in the record the reporter's transcripts of the pretrial hearings held on August 13 and 14, 2014 (between the detention and the jurisdictional hearings) where proof of service may have been acknowledged or waived.[6] (See *In re Kathy P.* (1979) 25 Cal.3d 91, 102 [where record did not show whether minor consented to adjudication under particular statutory procedure, court "will respect the presumption that official duty has been regularly performed"]; *In re Debra S.* (1982) 135 Cal.App.3d 378, 384 [minor failed to show error by means of adequate record where she failed to request that reporter's transcript of proceedings be prepared].)

        C.     *The Juvenile Court Was Not Required to Hold a Suitability Hearing*

Nor did the trial court err by not holding a hearing to consider Minor's suitability for DEJ. Under section 791, subdivision (a)(3), the prosecutor's written notice to the minor must include a clear statement that the juvenile court "may grant a deferred entry of judgment with respect to any offense charged in the petition, provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment[.]" Subdivision (b) of that section makes clear DEJ will be available only if the minor fulfills certain conditions: "If the minor *consents and waives his or her right to a speedy jurisdictional hearing,* the court may refer the case to the probation department or the court may summarily grant deferred entry of judgment if the minor *admits the charges in the petition and waives time for the pronouncement of judgment.*" (§ 791, subd. (b), italics added.)

Cases interpreting this statutory scheme have held that a suitability hearing is not required if the minor, after receiving notice of eligibility for DEJ, rejects DEJ consideration by contesting the charges. (*In re D.L.* (2012) 206 Cal.App.4th 1240, 1244.) As Division One of this court recently explained, "a juvenile court is not required to rule on a minor's possible suitability for a DEJ where the minor is *properly advised* of his or her DEJ eligibility and fails to admit the charges or waive the jurisdictional hearing

---

[6] We note that Minor's 35-page reply brief does not respond to the People's arguments regarding the inadequacy of the record.

because such a failure amounts to a rejection of the DEJ's expedited procedure." (*In re Trenton D.* (2015) 242 Cal.App.4th 1319, 1325.) We have concluded above that Minor received proper notice of his eligibility for DEJ. Despite receiving notice and despite being represented by counsel, he neither admitted the charges nor waived the jurisdictional hearing. Thus, Minor's actions "were tantamount to a rejection of DEJ." (*In re Kenneth J.* (2008) 158 Cal.App.4th 973, 980 (*Kenneth J.*).) The juvenile court may not "start the DEJ process in the teeth of the minor's opposition[.]" (*Id*. at p. 979.) Minor was detained, and from the outset, his counsel sought a contested jurisdictional hearing. At no time after requesting the contested hearing did counsel suggest DEJ might be appropriate. (Cf. *In re A.I.* (2009) 176 Cal.App.4th 1426, 1429-1432, 1435 [minor first rejected DEJ but later requested consideration for DEJ after denial of motion to suppress].) Minor simply "evince[d] no interest whatsoever" in DEJ. (*Kenneth J., supra,* 158 Cal.App.4th at p. 980.)

This case closely resembles *In re Usef S.* (2008) 160 Cal.App.4th 276 (*Usef S.*). There, the prosecutor "determined [the minor] was eligible for DEJ, and provided written notice of his eligibility to both [the minor] and the juvenile court." (*Id*. at p. 281.) A DEJ suitability hearing was scheduled, but the minor failed to appear, apparently because he had not been personally served with notice. The hearing was continued, but at the continued hearing "and at all subsequent hearings in the matter, the record reveals no mention by anyone—not the juvenile court, appellant, his attorney, nor the prosecutor— of the DEJ determination." (*Ibid*.) The minor's attorney later indicated his client was denying the allegations of the petition and requested a contested jurisdictional hearing.

On appeal, the minor contended the juvenile court's failure to address the DEJ issue was error and argued the court had failed to discharge a mandatory statutory duty to determine his suitability for DEJ. (*Usef S., supra,* 160 Cal.App.4th at p. 281.) The Court of Appeal rejected the argument, following *Kenneth J., supra,* 158 Cal.App.4th 973. (*Usef S., supra,* 160 Cal.App.4th at pp. 285-286.) *Usef S.* explained that "where the minor declines to admit each allegation in the petition, as [section 791] subdivision (a) requires, no duty on behalf of the juvenile court arises under subdivision (b) to refer the

22

case to the probation department or to summarily grant DEJ[.]" (*Usef S., supra,* 160 Cal.App.4th at p. 285.)  Here, Minor did not admit the allegations of the petition and instead requested a contested jurisdictional hearing.  As a consequence, the juvenile court was under no duty to refer the matter to the probation department or to summarily grant DEJ.[7]  (*Ibid.*)

V.      *Substantial Evidence Supports the Finding that Minor Knowingly Possessed an Assault Weapon*

Minor next raises a plethora of challenges to the sufficiency of the evidence showing he knowingly possessed an assault weapon and a short-barreled rifle.  We will address these challenges after setting forth our standard of review.

A.      *Standard of Review*

"Our review of [Minor's] substantial evidence claim is governed by the same standard applicable to adult criminal cases.  [Citation.]  'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]'  [Citation.]  ' "[O]ur role on appeal is a limited one." [Citation.]  Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could

---

[7] Minor's reliance on *In re C.W.* (2012) 208 Cal.App.4th 654 (*C.W.*) and *In re Luis B.* (2006) 142 Cal.App.4th 1117 (*Luis B.*) is misplaced.  In *C.W.,* the prosecutor determined the minor was eligible for DEJ and filed form JV-750 but failed to complete or serve form JV-751, or give the statutorily required notice of the minor's eligibility.  The minor denied the allegations and requested a contested hearing.  On appeal, he complained about the prosecutor's failure to give the requisite notice of his eligibility for DEJ, and the court's failure to determine his suitability.  Division Four of this court agreed and remanded the matter for further appropriate proceedings given the prosecutor's failure to comply with notice in a case where the minor was eligible for DEJ.  (*C.W., supra,* 208 Cal.App.4th at pp. 660-662.)  In *Luis B.,* the prosecutor completely failed to determine in the first instance whether the minor was eligible for DEJ, never completed form JV-750, and never provided any type of notice to the minor.  The appellate court also remanded the matter given the prosecutor's failure to determine the minor's eligibility and comply with the notice requirements.  (*Luis B., supra,* 142 Cal.App.4th at pp. 1121-1123.)  Those cases are clearly inapposite, because unlike the case before us, the minors were never given the statutorily required notice of their DEJ eligibility.

reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' [Citation.]" (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

"The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) Appellants should therefore "cast their arguments in this court within the confines of that basic principle." (*Id.* at p. 584.) "Thus, to prevail on a sufficiency of the evidence argument, the defendant must present his case to us consistently with the substantial evidence standard of review. That is, the defendant must set forth in his opening brief *all* of the material evidence on the disputed elements of the crime in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support" the factfinder's decision. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.) The failure to acknowledge the proper standard of review may be treated as a concession of lack of merit. (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.)

    B.    *Actual Firearm*

Minor argues there was insufficient evidence he handled an actual firearm. He again contends that since the photographs were digital images, they were easily manipulable and might be composites. This contention essentially rehashes his argument that the photographs were insufficiently authenticated, an argument we have rejected. " 'The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' [Citation.]" (*Goldsmith, supra,* 59 Cal.4th at p. 267.) When it comes to photographs, "[w]e are not entitled . . . to weigh the evidence or its effect and value, nor are we entitled to substitute our deductions for those of the trial court where two or more inferences can be reasonably drawn from such evidence, because our power is limited to a determination of whether such evidence is of sufficient substance to support the trial court's finding." (*South Santa Clara Val. Water*

24

*Conservation Dist. v. Johnson* (1964) 231 Cal.App.2d 388, 398.) We decline Minor's implicit invitation to reweigh the evidence before the juvenile court.

Minor also speculates the firearm might have been a replica, and he contends "exacting evidence must be required to establish the true nature of an object in a digital image that looks like a firearm." The law is clear, however, that the fact an object is a firearm may be established by either direct or circumstantial evidence. (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435.)[8] Here, Officer Hopwood identified the item depicted in People's Exhibit 2 as the gun and attached magazine he had taken into evidence in the principal's office. Murphy also identified the photograph as depicting that gun, explaining that the photograph on the first page of the exhibit was "the firearm that was presented to me earlier in questioning." The juvenile court could certainly compare the item these witnesses identified as the seized firearm with the item Minor is holding in the photograph and conclude it was the same weapon. We must accept logical inferences the juvenile court might have drawn from the circumstantial evidence. (*People v. Sanghera, supra,* 139 Cal.App.4th at p. 1573.)

C.    *Assault Weapon*

Minor also contends there was insufficient evidence the object was an assault weapon. Penal Code section 30605 (formerly Penal Code section 12280, subdivision (b)) states in relevant part: "Any person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170." Penal Code section 30515, subdivisions (a)(1)-(8) define the term " 'assault weapon.' " Minor contends the firearm at issue here does not meet the definition set out in subdivisions (a)(1) through (a)(3) of Penal Code section 30515. He

---

[8] In *People v. Monjaras,* the Court of Appeal rejected the defendant's contention that because the victim of an armed robbery "could not say whether the pistol in defendant's waistband was a gun or a toy," there was insufficient evidence the weapon was real. (164 Cal.App.4th at p. 1435.) The court published its opinion "to say in no uncertain terms that a moribund claim like that raised by defendant has breathed its last breath." (*Ibid.*) We reject Minor's effort to resurrect this moribund claim.

argues the firearm was not "a semiautomatic centerfire rifle" nor did it have the other characteristics set out in those three subdivisions of the statute.

The People contend the firearm is one described in Penal Code section 30515, subdivision (a)(4)(D) in that it is "[a] semiautomatic pistol that has the capacity to accept a detachable magazine and . . . [t]he capacity to accept a detachable magazine at some location outside the pistol grip." They note that in the juvenile court, the defense did not dispute the prosecutor's characterization of the weapon as "a semiautomatic pistol with the capacity to accept an attached magazine. And that magazine is located at some location outside the pistol grip." Officer Hopwood, whom Minor characterizes as "a weapons expert," testified that modifications to the original rifle left it with a six-inch barrel and a pistol grip, and he stated it could be considered a pistol "[i]f the length is within pistol standard." The firearm introduced in evidence as People's exhibit 1A met the "pistol standard" because the barrel is less than 16 inches. (See Pen. Code, § 16530, subd. (a) ["the term[] . . . 'pistol' . . . appl[ies] to . . . any device designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion, and that has a barrel less than 16 inches in length"].) Officer Hopwood also testified the 30-round magazine attaches and detaches "[r]ight in front of the trigger housing" and "[o]utside the pistol grip[.]" The photographs in People's exhibit 2 show the pistol grip and the attached magazine outside the pistol grip. "Minor does not contend that the rifle's assault weapon characteristics were obscure. The rifle was also introduced into evidence, allowing the trial court to examine it and determine that issue for itself." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 832 (*Daniel G.*).) There was sufficient evidence from which the juvenile court could conclude People's exhibit 1A was an assault weapon within the meaning of the statute.

D. *Knowledge*

Minor contends there was insufficient evidence he knew the firearm was an assault weapon. He contends his "connection with the object was fleeting and attenuated." Alluding to the photograph of him holding the weapon, Minor asserts that "the passive manner in which he appears to be holding the object . . . indicates his lack of familiarity

26

with firearms and his lack of awareness of its characteristics." We find this argument meritless.

In the juvenile court, "the People [bore] the burden of proving [Minor] *knew or reasonably should have known* the firearm possessed the characteristics bringing it within the [Assault Weapons Control Act]." (*In re Jorge M.* (2000) 23 Cal.4th 866, 887, fn. omitted (*Jorge M.*).) "The question of the defendant's knowledge or negligence is, of course, for the trier of fact to determine, and depends heavily on the individual facts establishing possession in each case. Nevertheless, . . . the Legislature presumably did not intend the possessor of an assault weapon to be exempt from the AWCA's strictures merely because the possessor did not trouble to acquaint himself or herself with the gun's salient characteristics." (*Id*. at pp. 887-888.) Knowledge may be proven circumstantially. (*Id*. at p. 884.) Moreover, "because of the general principle that all persons are obligated to learn of and comply with the law, in many circumstances a trier of fact properly could find that a person who knowingly possesses a semiautomatic firearm reasonably should have investigated and determined the gun's characteristics." (*Id*. at p. 885.) Thus, "it ordinarily is reasonable to conclude that, absent 'exceptional cases in which the salient characteristics of the firearm are extraordinarily obscure, or the defendant's possession of the gun was so fleeting or attenuated as not to afford an opportunity for examination,' a person who knowingly possesses a semiautomatic firearm reasonably would investigate and determine whether the gun's characteristics make it an assault weapon." (*People v. Taylor* (2001) 93 Cal.App.4th 933, 940.)

Judged by the foregoing standards, the People produced sufficient proof of Minor's knowledge in the juvenile court. Initially, we note a fundamental defect in Minor's argument. By inviting this court to draw inferences from the manner in which he appears to be holding the weapon in the photograph, Minor asks us to engage in factfinding. As we explained above, where more than one inference may be drawn from photographic evidence, we may not substitute our deductions for those of the juvenile court. (*South Santa Clara Val. Water Conservation Dist. v. Johnson, supra,* 231 Cal.App.2d at p. 398.)

Minor also contends there was no evidence that any of the gun's physical characteristics would have been apparent to "a criminally unsophisticated minor who had passing contact with it, particularly not the centerfire aspect[.]" We disagree. Minor was certainly able to see the gun's shortened barrel, its attached magazine ahead of the trigger guard, and its pistol grip just by looking at the gun when he held it. The outward appearance of the firearm and the magazine would reasonably lead a person possessing it to investigate and determine whether it had the characteristics of an assault weapon. (*People v. Taylor, supra,* 93 Cal.App.4th at pp. 940-941.)

Minor argues, "[h]e was just one of four individuals who were photographed with [the weapon], and his involvement was the briefest of any."[9] He therefore contends there is reasonable doubt as to whether he knew or should have known of the gun's characteristics, because he is "one who was in possession for only a short time, or whose possession was merely constructive, and only secondary to that of other joint possessors[.]" (*Jorge M., supra,* 23 Cal.4th at p. 888.) Here, as in *In re Daniel G., supra,* "[M]inor seizes on this language to contend his 'fleeting possession' as one of four persons handling the weapon is insufficient evidence to show that he knew or should have known the [gun] was an assault weapon." (*Daniel G., supra,* 120 Cal.App.4th at p. 832, fn. omitted.) But Minor cannot claim the weapon's characteristics, such as its "detachable magazine at some location outside of the pistol grip" (Pen. Code, § 30515, subd. (a)(4)(D)) were obscure. (*Daniel G., supra,* 120 Cal.App.4th at p. 832.) The firearm was also introduced in evidence, allowing the juvenile court to determine for itself whether its characteristics as an assault weapon would have led a reasonable person to investigate. "On this record, we hold that there was sufficient evidence to support a finding that . . . [M]inor at least should have known the [firearm] was a prohibited assault [weapon]." (*Ibid.*)

---

[9] Minor does not explain why the juvenile court should have concluded his involvement was briefer than that of the others who were photographed holding the weapon.

28

E.    *Possession*

Finally, Minor contends there was insufficient evidence he possessed the weapon. This contention is easily refuted, because the juvenile court had before it a photograph of Minor holding the weapon found at the school.  Minor's suggestion that he did not possess the weapon because he was one of a number of individuals who briefly handled it finds no support in the law.  Possession may be shared with others.  (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417.)  Indeed, possession need not even be physical, it may also be constructive.  (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.)  Here, the People produced evidence of Minor physically holding the weapon.  This is sufficient to establish his possession of it.  (*Daniel G., supra,* 120 Cal.App.4th at p. 831 [testimony that the minor was seen holding a firearm and passing it to others sufficient to establish possession].)

VI.    *The Juvenile Court Did Not Abuse its Discretion by Declaring the Offenses Felonies*

Minor's next contention is that the juvenile court abused its discretion in declaring the offenses felonies.  He argues the court failed to consider all the relevant factors in making its decision, thus rendering it arbitrary.  We find no abuse of discretion.

Where a minor "is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."  (§ 702.)  This is a matter entrusted to the juvenile court's discretion.  (See *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)  The factors the court should consider in exercising its discretion include " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citation.]"  (*Ibid.*)  "We will not disturb the court's decision on appeal unless the party attacking the decision clearly shows the decision was irrational or arbitrary."  (*People v. Sy* (2014) 223 Cal.App.4th 44, 66.)  " 'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be

set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*Alvarez, supra,* 14 Cal.4th at pp. 977-978.)

Minor has not demonstrated the juvenile court failed to consider the relevant factors. In its ruling, the court discussed more than once the nature and circumstances of the offense, explaining that it considered the offense extremely serious because of the type of firearm involved and Minor's failure to disclose its presence on a school campus. (See *Alvarez, supra,* 14 Cal.4th at p. 978 [court should consider nature and circumstances of the offense].) In addition, the juvenile court referred specifically to the fact that Minor may have been high or drunk when he possessed the gun. (See *ibid.* [court should consider defendant's appreciation of and attitude toward the offense].) On this record, Minor has not shown the juvenile court failed to consider the relevant factors in deciding to classify the offenses as felonies, and we must therefore presume the court acted to achieve legitimate sentencing objectives. (*Id.* at p. 977.)

VII. *The Dispositional Order Must Be Modified*

Minor points out a number of alleged defects in the dispositional order. First, he contends the juvenile court erred by failing to specify his maximum term of confinement (MTC). (See § 726, subd. (d)(1).) He contends his MTC was three years. The People concede the juvenile court failed to specify the MTC, and they agree the MTC should be three years, although they arrive at that conclusion for reasons different from Minor's. In his reply brief, Minor does not object to the People's reasoning. We will therefore order the dispositional order modified to reflect an MTC of three years. (See *In re David H.* (2003) 106 Cal.App.4th 1131, 1138.)

Minor also contends, and the People agree, that the juvenile court was obligated to calculate his custody credits. The juvenile court stated Minor had been confined for "60 plus days" but it did not calculate the total number of custody credits. The date of Minor's transfer to OAYRF does not appear in the record, and therefore we cannot ourselves determine the total number of days to which he is entitled. (Cf. *In re J.M.*

30

(2009) 170 Cal.App.4th 1253, 1256 [appellate court calculated total confinement credits].) We will accordingly remand the matter to the juvenile court and direct it to calculate the total number of days of custody credits.

Minor contests the $200 restitution fine imposed by the juvenile court. He argues the fine "appears to be based on both offenses." The People contend this argument is forfeited, because no objection was raised in the juvenile court. (See, e.g., *People v. Nelson* (2011) 51 Cal.4th 198, 227 [failure to object forfeited claim regarding defendant's inability to pay restitution fine].) Even if the claim has been properly preserved, however, it fails. There is nothing in the record showing the juvenile court arrived at the $200 figure in the way Minor assumes it did. "[T]he absence of information, i.e., a silent record, . . . compels the application of the presumption of correctness." (*People v. Leonard* (2014) 228 Cal.App.4th 465, 477, fn. 6.) Here, "[a]t best, the record shows a basis for differing opinions of how the court calculated the $[200]. That is not sufficient to establish a reversible abuse of discretion." (*Kenneth J., supra,* 158 Cal.App.4th at p. 981.)

VIII. *The No-Contact Probation Condition Is Not Unconstitutionally Vague or Overbroad*

Minor challenges as unconstitutionally vague and overbroad a probation condition requiring that he have "[n]o association or contact with" three named individuals. Minor argues this condition is invalid because it lacks a distance limitation and a knowledge requirement. In its oral explanation of the condition, the juvenile court stated, "That means no hanging out with, texting, Facebooking, Instagramming, calling any of these individuals. [¶] I don't know if any of these individuals you are going to encounter at [OAYRF]. To the extent you do, you are not to congregate with them when you are not participating in program activities. [¶] So, in other words, during free time, you are not to hang out with them in the rec room, that sort of thing."

The People contend Minor's distance limitation challenge is forfeited because his counsel raised no objection below. They argue ordinary principles of forfeiture apply because review of Minor's challenge would require "scrutiny of individual facts and

circumstances[.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 885 (*Sheena K.*).) In their view, Minor's distance limitation challenge does not " 'present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." [Citation.]' " (*Id.* at p. 889.) We agree. Indeed, in arguing for the distance limitation, Minor contends, "The subjects of the no-contact order here may not be readily identifiable to appellant due to the brief nature of their contact, if any, and the possibility of changes in appearance." Minor then cites to certain evidence before the juvenile court and asks us to draw conclusions about what it does or does not show. Thus, the scope of this condition and its constitutionality can be determined only by reference to the sentencing record before the juvenile court. (See *In re Luis F.* (2009) 177 Cal.App.4th 176, 182 [alleged defects in probation condition requiring minor to continue taking prescribed medications could be determined only by facts in record regarding medications minor had been taking prior to court order].) Therefore, this claim has been forfeited.

Minor also contends the condition is vague because it does not include a knowledge requirement.[10] We disagree. First, the probation condition here at issue identifies by name the three individuals with whom Minor is to have no contact. It is thus unlike conditions that have been found unconstitutionally vague because they refer only to categories of persons. (See *In re Justin S.* (2001) 93 Cal.App.4th 811, 816 [probation condition prohibiting association with gang members unconstitutionally overbroad unless restricted to known gang members].) Here, an ordinary person would certainly understand what behavior is prohibited. (*In re Byron B.* (2004) 119 Cal.App.4th 1013, 1015,1018 [probation condition prohibiting contact with any person known to be disapproved by a parent or probation officer "is not unreasonable, overbroad, or void for vagueness"]; see *Sheena K., supra,* 40 Cal.4th at p. 892 [no-contact condition was

---

[10] The California Supreme Court granted review in *In re A.S.* (2014) 227 Cal.App.4th 400 [178 Cal.Rptr.3d 319] review granted September 24, 2014, S220280. The court granted review to determine whether no-contact probation conditions must be modified to include an explicit knowledge requirement.

modified on appeal to include qualification that defendant have knowledge of who was disapproved by her probation officer; modification made condition constitutionally valid].)  Second, the language of the condition must only be reasonably specific.  (*Id.* at p. 890.)  The juvenile court provided very concrete examples of the types of conduct it intended to prohibit.  In light of its clarification, Minor can reasonably be expected to understand what types of contact or association are forbidden.  Finally, although Minor raises the issue of possible unwitting violations, his concern is speculative.  That is particularly true here, where the probation condition notifies Minor "through . . . reference to persons whom defendant [knows] to be disapproved of by" the juvenile court.  (*Sheena K., supra,* 40 Cal.4th at p. 891.)

DISPOSITION

The dispositional order is modified to reflect a maximum term of confinement of three years.  The matter is remanded to permit the juvenile court to calculate Minor's custody credits.  In all other respects, the judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.

A143376

34

Superior Court of the County of Contra Costa, No. J1400437, Rebecca C. Hardie, Judge.

Amanda K. Roze, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General, Donna M. Provenzano and Laurence K. Sullivan, Supervising Deputy Attorneys General for Plaintiff and Respondent.

A143376